## WHITEHEAD COAL MINING CO. v. PINKSTON.

No. 8314—Opinion Filed Nov. 27, 1917.

On Rehearing, Oct. 8, 1918.

(175 Pac. 364.)

(Syllabus.)

**1. Death—Wrongful Death—Right of Action—Statutes—"Next of Kin."**

Where there has been no administration upon the estate of a deceased single person, although an adult, and who is survived by his father and sister, the father is his "next of kin" under section 8418, Rev. Laws 1910, and may maintain an action for his wrongful death in his own name, where the deceased, prior to his death, lived with his father and had devoted his earnings to his support, and there was a reasonable expectancy that he would continue to do so.

On Rehearing.

**2. Mines and Minerals—Abandoned Mine—Negligence—Pleading.**

The petition examined, and found to state a cause of action when challenged by a general demurrer.

**3. Mines and Minerals—Temporary Suspension of Operations — Danger Signals — Construction of Statute.**

That part of section 3976, Rev. Laws 1910, which provides that in all mines where operations are temporarily or indefinitely suspended, the superintendent and mine foreman shall see that a danger signal be placed at the mine entrance or entrances, which shall be a sufficient warning to persons not to enter the mine, was not intended to protect persons engaged in mining only, but was intended to afford protection to the public generally.

**4. Negligence—Negligence Per Se—Nonperformance of Statutory Duty.**

It is well settled that the failure to perform a statutory duty, imposed by a valid statute under the police power of the state

for the protection of the public, is negligence per se.

Owen, J., dissenting.

Error from District Court, Okmulgee County; Ernest B. Hughes, Judge.

Action by John Pinkston against the Whitehead Coal Mining Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Wm. M. Matthews, for plaintiff in error.

H. M. Ledbetter and E. W. Smith, for defendant in error.

Opinion by GALBRAITH, C. This is an appeal from an order of the trial court overruling a demurrer to a petition in an action for damages for wrongful death. The petition, omittting the caption, reads as follows:

"John Pinkston, father of Claude Pinkston, deceased, plaintiff, complaining of the Whitehead Coal Mining Company, a corporation, defendant, represents:

"(1) That on the 5th day of September, A. D. 1915, one Claude Pinkston, a single son of the plaintiff's, was killed by reason of the negligence of the defendant, the Whitehead Coal Mining Company, a corporation, and that no administrator or executor or other personal representative has been appointed to administer upon the estate of the said Claude Pinkston; that at the time hereinbefore mentioned, and for a long time prior thereto, the above-named defendant, the Whitehead Coal Mining Company, was a duly organized and existing corporation under and by virtue of the laws of the state of Arizona, and that said corporation was duly authorized to transact business with the state of Oklahoma, and that said defendant was at the time hereinbefore mentioned, and for a long time prior thereto, the owner of an unusued or abandoned mine about one half mile east of the city of Henryetta, Okmulgee county, Okla., which said mine is known and designated as the 'Whitehead No. 1,' and that said defendant is the owner of a certain camp of miners' quarters in the vicinity of said Whitehead No. 1 mine; that said defendant maintains an office in the city of Henryetta, said county and state.

"(2) That heretofore, to wit, on the 5th day of September, A. D. 1915, Claude Pinkston, hereinafter referred to as 'deceased,' in company with three young ladies and one young man, visited the premises of the said Whitehead No. 1, as was the custom of the camp or community; that one of the young ladies dropped a piece of jewelry into the entrance or shaft to said mine, which said piece of jewelry was of rare value to deceased; that the beforementioned piece of jewelry lodged on a cage some 30 or 40 feet

down in said shaft or entrance; that defendant, its agents, servants, and employes, had negligently and carelessly allowed the said unusued and abandoned mine to remain uninclosed, and had failed entirely to post cautionary notices on the premises around said shaft or entrance, and had negligently and carelessly allowed said grounds to be used as a playground for said community; that deceased went down in said shaft or entrance to procure the aforesaid piece of jewelry, and that by reason of the defendant's negligence in allowing dangerous gases or damps to accumulate in an uninclosed or unmarked, yet easily accessible and dangerous, unusued or abandoned mine, deceased was cruelly and savagely suffocated by said gases or damps in such a manner as to cause his death.

"(3) That deceased was an ignorant, uncouth country boy, and was not aware of the dangerous gases or damps that accumulate in abandoned and unusued mines, and that by reason of the defendant's negligence and carelessness in allowing said premises around an abandoned or unusued mine to be used as a playground for the community, of which they had due notice, and in leaving the entrance or shaft to said mine uninclosed, and in totally failing to post cautionary notices on the premises, so as to cause the ignorant and untutored as to the dangers of unused and abandoned mines to take due notice of the dangers thereof, deceased was cruelly and savagely suffocated in said shaft or entrance to Whitehead No. 1 mine, as aforesaid.

"(4) That by reason of all the acts of negligence of defendant as aforesaid deceased was cruelly and savagely suffocated in said abandoned and unused mine in such a manner as to cause his untimely death as aforesaid.

"(5) That at the time of his death deceased was a young man of 21 years of age, strong, healthy, vigorous, and energetic, and bid fair to live to an old age, to wit, the age of 80 years, but for his untimely death as aforesaid; that in the capacity of farm hand or farm laborer his services were worth and he earned large sums of money, to wit, $50 per month, and he would have continued to earn said sums and larger sums by reason of his becoming more thoroughly learned and efficient in the intricate science or agriculture.

"(6) That deceased left surviving him his father the plaintiff, John Pinkston, and three sisters, two of whom are married and one of whom is single, about ten years of age; that he used his earnings in supporting his father, the plaintiff, and his little sister, Myrtle; and that he has at all times resided with his father, the plaintiff, and family.

"(7) That by reason of the death of the deceased as aforesaid plaintiff has been dam-

aged in actual damages in the sum of $15,-000.

"Wherefore plaintiff prays judgment against the defendant for the sum of $15,000, his actual damages as aforesaid, and for the costs of this suit and for such other proper and equitable relief as to the court may seem just."

The grounds of the demurrer were as follows:

"(1) Because plaintiff has no legal capacity to bring or maintain this suit.

"(2) Because there is a defect of parties plaintiff.

"(3) Because the petition fails to state facts sufficient to constitute a cause of action in favor of the plaintiff and against defendant."

This demurrer raises two questions: (1) Under the facts alleged could the plaintiff maintain the action? (2) Were the facts set out in the petition sufficient to constitute a cause of action? The facts set out in the petition were admitted by the demurrer. It appears from these that the deceased was a single man, and that there had been no administration of his estate, and that he was survived by his father, who was therefore his "next of kin," under section 8418, Rev. Laws 1910. The father as "next of kin" was the proper party to bring the action, and he could maintain the suit in his own name. Shawnee Gas & Elec. Co. v. Motesenbocker, 41 Okla. 454, 138 Pac. 790; Big Jack Mining Co. v. Parkinson, 41 Okla. 125, 137 Pac. 678. An affirmative answer must be returned to the first question raised by the demurrer.

It is argued on behalf of the plaintiff in error that the deceased was a trespasser upon its premises, and that the company owed him no duty except not to wantonly injure him, and therefore its failure to comply with the requirements of the statute making it the duty of the company to fence an abandoned or unused mine, and a shaft or entrance, thereto, and to place warning notices thereabouts are not applicable to the plaintiff, inasmuch as these statutes were enacted for the protection of employes of the company in and about the mine, and that the failure of the company to comply with the statute was not the proximate cause of the injury, and for these reasons the facts set out in the petition and admitted by the demurrer are not sufficient to constitute a cause of action. The cases cited in support of this position are not controlling, for the reason that these decisions announce the rule in regard to the duty of the owner of premises to a trespasser thereon, namely, that its only duty is not to wantonly injure him. Counsel is in error in assuming that the deceased was a trespasser. Under the facts alleged in the petition, and admitted by the demurrer, the deceased was not a trespasser; he was clearly a licensee or an invitee; and therefore the rule announced in Wilhelm v. Missouri, O. & G. R. Co., 52 Okla. 317, 152 Pac. 1088, L. R. A. 1916C, 1029, is controlling, as follows:

"Regardless of the fact that the person injured was a bare licensee upon the track of the railroad company, the company is bound to exercise that degree of care and watchfulness to protect human life, that is commensurate with the probability that persons may be upon its track at any given point. And whether that has been done or not, under proper instructions, is a question for the jury."

The allegations of the petition are that the company was the owner of an unused or abandoned mine about one-half mile east of the city of Henryetta, known as "Whitehead No. 1," and also the owner of a certain camp of miners' quarters in the vicinity of the said "Whitehead No. 1;" that on the day of the accident the deceased, in company with three young ladies and one young man, visited the premises of the said "Whitehead No. 1, mine," as was the custom of the camp or community; that one of the young ladies dropped a piece of jewelry into the entrance or shaft to said mine, which said piece of jewelry was of rare value to the deceased; that the before-mentioned piece of jewelry lodged on the cage some 30 or 40 feet down in said shaft or entrance; that defendant, its agents, servants, and employes, had negligently and carelessly allowed the said unused and abandoned mine to remain uninclosed, and had failed entirely to post cautionary notices on the premises around said shaft or entrance, and had negligently and carelessly allowed said grounds to be used as a playground for said community; that deceased went down in said shaft or entrance to procure the aforesaid piece of jewelry; and that by reason of the defendant's negligence in allowing dangerous gases or damps to accumulate in an uninclosed and unmarked, yet easily accessible and dangerous, unused or abandoned mine, deceased was cruelly and savagely suffocated by said gases or damps in such a manner as to cause his death. It is further alleged that the company had notice that the grounds around this abandoned mine were used as a playground for the community.

It is argued in behalf of the plaintiff in error that the provisions of section 3974 of

the statute providing that "the entrance or entrances to be worked out and abandoned places, shall be properly fenced off and cautionary notices shall be posted upon said fencing to warn persons of danger" were made for the protection of employes and not for the public. Whether or not this is true it is not necessary to determine in this case, since there can be no question that the provisions of section 3976 do apply to the public in general, and particularly to that part of the public who, with knowledge and consent of the company, were accustomed to use the grounds surrounding one of its abandoned mines as a playground. This statute provides:

"In all mines where operations are temporarily or indefinitely suspended, the superintendent and mine foreman shall see that a danger signal be placed at the mine entrance which shall be a sufficient warning to persons not to enter the mine, and if ordinary circulation of air through the mine be stopped, each entrance to said mine shall be securely fenced off and a danger signal shall be displayed upon said fence."

—and providing that it shall be a misdemeanor for any one to fail to heed the warning "by passing beyond any danger signal placed at the entrance to a working place, or any other place."

Section 4014 of the statute makes the corporation or the mine owner who fails to comply with this provision of the statute civilly liable to any person injured thereby to the extent of such injury.

Under these provisions of the statute and the allegations of the petition, it seems clear that the company owed a duty to the deceased, as well as other persons, who came upon its premises by invitation to use the same as a playground, to fence the entrance to the mine and place warning signals of danger upon such fence. Failing to do so, its liability for resulting injury would follow.

Again, it is argued that the deceased was 21 years of age, and that the father as next of kin did not sustain any injury by his death, and therefore could not recover, but the allegations of the petition are that the deceased was earning $50 a month, and was living with his father and spending his earnings in the support of his father and sister. These allegations, so far as the demurrer is concerned, show a "reasonable expectancy" on the part of the father for continued support on behalf of the deceased, and that he sustained a loss by reason of the death, under the rule announced in the Motesenbocker Case, supra.

It therefore appears that an affirmative answer must also be returned to the second question raised by the demurrer, and that the ruling of the trial court in overruling the demurrer to the petition was not error, and that the judgment appealed from should be affirmed.

By the Court: It is so ordered.

## On Rehearing.

PER CURIAM. After hearing the oral arguments and examining the briefs submitted upon petition for rehearing, the court is convinced that the opinion handed down by the commission is in the main correct and should be approved. The principal grounds for rehearing urged by counsel may be summarized as follows:

(1) The opinion prepared by the commission erroneously holds that the petition of the plaintiff states facts sufficient to constitute the deceased an invitee or licensee of the surface adjacent to the mine.

(2) "Even if it be assumed that plaintiff's intestate did go upon the grounds of the defendant by direct invitation. still that would not constitute an invitation to climb down into the mine of the defendant. He was not injured by walking across the grounds, but his injuries were sustained by his deliberate and intentional act of climbing down into a shaft, without the knowledge or permission of the defendant. In other words, it is not charged in the petition that the defendant had permitted the community to climb up and down a ladder in its shaft; but the only allegation is that it had permitted its grounds to be used as a playground. The deceased did not fall into the shaft."

In our judgment it was not necessary to allege or prove that the decedent was either a licensee or an invitee, in order to entitle the plaintiff to recover. The statute (section 3976. Rev. Laws 1910) is a police regulation enacted for the protection of the public in general. By its terms the mine owner owes to all classes of persons, whether licensee, invitee, or trespasser, the duty of seeing that danger signals be placed at the mine entrance, which shall be sufficient warning to all persons not to enter the mine.

The petition alleges a violation of this statutory duty on the part of the defendant. It is well settled that the failure to perform a statutory duty imposed by a valid statute under the police power of the state for the

protection of the public is negligence per se. Richardson v. El Paso Consol. Gold Mining Co., 51 Colo. 440, 118 Pac. 982. If the petition is obscure in any particular in stating facts sufficient to constitute a cause of action under the statute, we would say it is in the allegation which describes the mine as "an unused or abandoned mine." The applicable part of the statute relates to "all mines where operations are temporarily or indefinitely suspended." In view, however, of the statute (section 4766, Rev. Laws 1910), which provides that in the construction of any pleading, for the purpose of determining its effect, its allegations shall be liberally construed, we are constrained to hold that the petition is not fatally defective in this respect.

For these reasons, in addition to those stated in the original opinion, the petition for rehearing is denied.

All the Justices concur, except OWEN, J., who dissents.