## MAGNOLIA PETROLEUM CO. v. WITCHER.

No. 18800. Opinion Filed Dec. 17, 1929.

Rehearing Denied Feb. 4, 1930.

Commissioners' Opinion, Division No. 2.

B. B. Blakeney, Hubert Ambrister, and W. R. Wallace, for plaintiff in error.

J. S. Garrison and Yerker E. Taylor, for defendant in error.

HALL, C. This was an action for damages for personal injuries. The plaintiff at the time of the injury was a minor of the age of 18 years. The defendant was and is an oil company engaged in the production and manufacture of petroleum products. The defendant was the owner of an oil and gas lease located near the town of Pernell in Garvin county. It had drilled a test well on the premises, and failed to find oil or gas in paying quantities. The defendant partially plugged the well and abandoned the lease. It appears that the top of the hole was left open to a depth of about 200 to 400 feet. The mouth of the well was between 12 and 15 inches in diameter. The well was located on a prairie or open ground, and within 30 or 40 yards of a regular beaten pathway or roadway leading to the town of Pernell. Persons going to this town of Pernell would occasionally and constantly stop at this would-be well and look it over. One man testified that he stopped there nearly every time he went to town. The only protection or guard around the well, or the hole in the ground, at any time was a board resting over it, which was constantly being removed.

On the day of the injury complained of, plaintiff, a boy 18 years of age, with no knowledge of oil or gas wells, and a companion were en route to this town of Pernell, and stopped by the wayside to give this well an inspection. They dropped some rock or solid pieces of earth in the well, and noted their journey down the hole until the bottom was reached. They could not see, however, what was going on in the well; they therefore lighted the end of a strand of seagrass rope and lowered it into the well to see what it looked like down below. The result was a terrific explosion, which, considerably, for the time being, emasculated plaintiff's face and did certain permanent injuries to his eyes. Plaintiff brought this action to recover damages against the defendant for leaving this hole unguarded and asked that he be awarded $2.990. The jury awarded him the sum of $1,250. The defendant appealed.

The principal contention of plaintiff in error (the defendant in the trial court), is that there was and could be no primary negligence in this case. It contends: (1) That plaintiff was a trespasser and that it owed him no duty except not to wantonly or maliciously injure him; and (2) that plaintiff's injuries, if any, resulted from his own contributory negligence.

Plaintiff (defendant in error) bottomed his case upon the theory that the defendant, in leaving the well unsubstantially plugged, that is, its failure to plug the well in a substantial manner at least ten feet below the surface and fill such well to the surface with such material as would prevent the well from caving before final abandonment, constituted a breach of public duty, and that such breach constituted negligence as a matter of law.

Defendant contends that section 7970, Comp. Stat. 1921, is a conservation statute only; that is, it was enacted to prevent the diffusion of water and salt water into the oil producing sands, and that it is nowise a police regulation or statute created for the benefit of the general public. The statute is lengthy and deals in detail as to the manner and method of plugging abandoned

wells. We would be inclined to agree with defendant if the statute did not conclude with the provision as follows:

"And provided, further, that when such lessee or operator removes the derrick from around such wells, he shall plug such wells in some good and substantial manner, at least ten feet below the surface and fill such well from that point to the surface with such material as will prevent the well from caving, before final abandonment."

It will be thus seen that the statute is not only a conservation statute, but a police regulation as well. So long as the derrick remains over the well or hole, no duty is imposed upon the lessee to plug and fill the top of the well; but as soon as the derrick is removed, the statute provides the well should be plugged to at least ten feet below the surface, and filled with some material which will prevent its caving. Certainly this is not a conservation measure, because the derrick over the hole could serve no useful purpose for conservation, and the shallow layer of earth constituting ten feet of the surface could not operate to conserve oil or gas. It is clear that the Legislature in enacting this law had in mind both a conservation measure (the principal reason for the enactment of the statute) and also a measure for the protection of the public generally.

The authorities are practically uniform that, as a general rule, the violation of a public duty enjoined by law for the protection of persons and property constitutes negligence per se or negligence as a matter of law. Whitehead Coal Mining Co. v. Pinkston, 71 Okla. 124, 175 Pac. 364; Midland Oil Co. v. Ball, 115 Okla. 229, 242 Pac. 161; C., R. I. & P. Ry. Co. v. Pitchford, 44 Okla. 197, 143 Pac. 1146.

The standard of duty having been fixed and defined by law, the only question relating to negligence necessary to submit to the jury in this case was the question of contributory negligence of the plaintiff. Under our law, that is always a question for the jury, regardless of the fact that there is no conflict in the testimony tending to establish such contributory negligence. This is the mandate of section 6, art. 23 of the Constitution. St. L. & S. F. Ry. Co. v. Long, 41 Okla. 177, 137 Pac. 1156, Ann. Cas. 1915C, 432; Dickenson v. Cole, 74 Okla. 79, 177 Pac. 570, affirmed by the Supreme Court of the United States in C., R. I. & P. Co. v. Cole, Adm'r, 251 U. S. 54, 40 Sup. Ct. 68, 64 L. Ed. 133.

Even though said section 7970 of the statutes were not a police regulation imposing a public duty upon the defendant, it would find itself in no different situation. In this connection defendant contends, in addition to plaintiff being a trespasser, that as he was not injured by falling into the well, the proximate cause of his injury was igniting the grass rope and lowering it into the hole. That argument raises the question of contributory negligence, which was a matter for the jury and not for us. Evidently the jury concluded that the plaintiff's act in lowering the ignited rope into the hole was a mere condition and not a contributing cause, under the rules of actionable negligence.

The contention also raises the question of primary or original negligence of the defendant. In this connection the correct rule for determining the proximate cause in cases of this nature is set forth in the case of Town of Depew v. Kilgore, 117 Okla. 264, 246 Pac. 606, which, in effect, is that where the defendant is guilty of original negligence, and the evidence tends to show that the original negligence placed in motion the intervening or independent act, which intervening act was the immediate cause of the injury, the defendant will be held liable. This case will be discussed further in succeeding paragraphs of this opinion.

The analogy between the present case and the case of Whitehead Coal Mining Co. v. Pinkston, supra, is almost exact. In that case the defendant had abandoned a coal mine. The mine entrance was not closed, nor danger or precautionary signals placed at the entrance. A companion of plaintiff's intestate dropped a piece of jewelry into the shaft of the mine, and the deceased, a youth of only 21 years, climbed down the shaft to get the jewelry which lodged upon a cage some 30 or 40 feet below, and was suffocated by poisonous gases contained in the shaft.

In that case the argument advanced was that:

"He (plaintiff's intestate) was not injured by walking across the grounds, but his injuries were sustained by his deliberate and intentional act of climbing down into a shaft without the knowledge or permission of the defendant. * * * The deceased did not fall into the shaft."

This court held that the defendant was liable for the death, basing its decision, however, upon section 7559, Comp. Stat. 1921, which is the related statute to section 7970, and directs the closing of the entrance to abandoned mines.

The fact that plaintiff did not receive his injuries by falling into the well is not a controlling factor in the case, but is only a condition or situation fortunate for both plaintiff and defendant. After this well had been completely abandoned, the acts of the defendant in leaving unguarded the hole in the ground 200 to 400 feet in depth, in which a person could fall, or in which an explosive gas would likely and did accumulate and possibly emit therefrom or create a dangerous agency or nuisance even though it remained only in the hole, and such hole or agency within a short distance of an established road or byway where people constantly walked or had a right to be and commit no other offense than being technical trespassers, constituted gross negligence. This hole in the ground was not placed there by the defendant as simply a shaft in the earth; it was exploring for oil or gas or both. If the strata penetrated was not wholly free from geological structure indicating either a trace of oil or gas, the defendant knew that there would be a seepage of gas into the hole. The defendants knew the habits and nature of natural gas, and of course knew of its high explosive nature. Our courts in numerous decisions have settled the question that gross negligence is a foundation for a cause of action by one who is only a technical trespasser. The formula apparently restricting liability to intentional, willful and wanton injuries to technical trespassers is but a well-known platitude or a statement of the rule in very general language. That rule is undoubtedy correct when the term "trespasser" is used according to its legal definition, as it is defined in the law dictionaries, or by Blackstone in his Commentaries, for example: "Any misfeasance or act of one man whereby another is injuriously treated or damnified." 3 Blackstone's Comm. 208. The rule is inapplicable to what is termed technical trespassers.

Also, in this connection, the word "wanton" must bear the qualification given it by judicial construction. In legal contemplation, an act to be "wanton" may be less rigorous or depraved than is indicated by the ordinary meaning of the word.

This court in the well-considered and exhaustive opinions in the cases of C., R. I. & P. Ry Co. v. Stone, 34 Okla. 364, 125 Pac. 1120, and City of Shawnee v. Creek, 41 Okla. 227, 137 Pac. 724, has held that gross negligence is equivalent to and synonymous with a "wanton act", and that there is no material distinction between an act of commission and one of mere omission. Upon this point the late Justice Thacker, in the case of City of Shawnee v. Cheek, supra, after a careful analysis of the adjudications on the subject, made the following sound deductions:

"A principle that appears to be deducible from much of the case law on the subject allowing recovery is that it is not only the duty of a landowner to a trespasser to not injure him intentionally or wantonly, but **that an act or omission involving a reckless indifference to the safety of reasonably anticipated technical trespassers, such as** children of tender years, although without intent to injure, may be wanton. * * *

"As used in this opinion, the words 'wanton', 'wantonly', and 'wantonness' mean and are applicable to acts or omissions of a landowner involving reckless disregard for the safety of such, if any, merely technical trespassers as should in reason have been anticipated by a person of ordinary prudence, and such acts or omissions may be 'wanton', 'wantonly' done, or the result of 'wantonness', although merely thoughtless or heedless in their superficial character, and free from intent to injure."

The case which the court had under consideration involved injury to a child; and therefore the example submitted was of that class. But, as we shall presently see, the rule as to adults is no different except in cases involving the application of the rule of attractive nuisance.

The recent case of the Town of Depew v. Kilgore, supra, involved an action for an injury from an exploding dynamite cap. The plaintiff in that case was a minor under the age of 14 years, but the principle of law is no different than in certain cases of children of more mature age, and also of adults. We think it appropriate to reproduce a portion of the opinion herein. The fourth paragraph of the syllabus of that case reads as follows:

"Where the defendant is guilty of original negligence and the evidence shows, or it reasonably appears that the original negligence placed in motion an intervening and independent act which was the immediate cause of the injury, but that the injury would not have occurred without the original negligence, the defendant will be held liable."

In the body of the opinion, it is said:

"The general rule is that the law requires each person to use such care for the safety of others in and about the keeping of his property as an ordinarily prudent person would have used under all the facts and circumstances of the case. Pollard v. Okla-

homa City Ry. Co., 36 Okla. 96, 128 Pac. 300. * * *

"The defendant next contends that the chain of causation is broken and that the original negligence was not the proximate cause of the injury, as the evidence shows that the act of Tom McIntosh in directing the plaintiff to apply a lighted match to the dynamite cap intervened as an independent act, which was the immediate and proximate cause of the injury. The rule of law applicable to this situation is that where the defendant was guilty of original negligence, and, from the evidence, the inference may be reasonably drawn that the original negligence placed in motion the intervening act which was the immediate cause of the injury, but that such injury would not have happened if it had not been for the original negligence, the defendant will be held liable. This was a question for the jury, and evidently the jury concluded that the original negligence of the defendant in placing the dynamite caps in the exposed position so that the plaintiff came in contact therewith and procured possession of one of the caps, was the occasion of, or put in motion, the independent act of Tom McIntosh in directing the plaintiff to apply a lighted match to the cap. City of Tulsa v. McIntosh, 90 Okla. 50, 215 Pac. 624."

What is defined or enumerated as a technical trespass is set forth in Shearman and Redfield on the Law of Negligence, sec. 98, and quoted with approval in the case of City of Shawnee v. Cheek, supra, as follows:

"When the man proves that he was ignorant of the fact that he was trespassing, or shows that his trespass was only technical, and such as he might reasonably suppose would not be objected to by defendant, and did not in fact produce any appreciable injury or annoyance, his right to recover is just as good as that of an infant. All this is well settled."

The case of C., R. I. & P. Ry Co. v. Stone, supra, involved an injury to a trespasser. The opinion was prepared by the late Justice Sharp, then a Commissioner of this court. The opinion bears earmarks of diligent research and connected reasoning. The first section of the syllabus of the case is as follows:

"It is gross * * * negligence for a railroad company, in the operation of its trains, to leave a string of freight cars unattended, or not under control, upon a siding or passing track where there is a sufficient grade to permit of the cars, either by gravitation or lack of control, running down such inclined track and onto the main line or track, and there collide with a regular passenger train then due.

"(a) The failure in such case to discharge a manifest duty is not to be excused by the fact that the party injured, himself free from contributory negligence, was a trespasser on the train with which the freight cars collided in escaping from the side track and running out and onto the main line.

"(b) The commission of such gross and wanton negligence is a violation of a manifest duty to the public, trespassers and all, themselves free from contributory negligence, not to turn such power loose without being under control."

The court, in the body of the opinion, in quoting from the case of Lake Shore & Michigan Southern Railway Co. v. Bodemer, 139 Ill. 596, 29 N. E. 692, 32 Am. St. Rep. 218, where an injury resulted because of the train traveling at an unusual rate of speed, 30 or 40 miles an hour through the crowded streets of a city, said:

"This conduct tended to show such a gross want of care and regard for the rights of others as to justify the presumption of willfulness."

At another juncture in the opinion, the court further said:

"In Patton v. East Tenn., V. & G. R. Co., 89 Tenn. 370, 15 S. W. 919, 12 L. R. A. 184, the plaintiff was a trespasser upon the track of the railroad. The court, in quoting from a former opinion, said:

" 'The mere fact that a party is a trespasser will not prevent him from recovering for injuries negligently inflicted by another which might have been averted by ordinary and proper prudence on the part of the latter'. There the death was occasioned by the fact that deceased, who had been walking along the railway track, stepped aside to allow a train coming from the rear to pass, and then stepped back on the track, and was run over by a detached portion of the train that had broken loose from the front part. The opinion is by Lurton, J., now a member of the Supreme Court of the United States, and is an able one; and the principle announced is in entire harmony with the theory upon which plaintiff below recovered judgment.

"By section 2941, Comp. Laws 1909, gross negligence is defined as the want of slight care and diligence. * * *

"In Conley v. Cincinnati, etc., Ry. Co., 89 Ky. 402, 12 S. W. 764, the Court of Appeals of the state of Kentucky said in the syllabus:

" '* * * The night was dark, and plaintiff's intestate, after having seen the engine

with cars attached to it pass by, started across the track, though not at a public crossing, and was run over by the rear portion of the train and killed. Held, that the detaching of part of the train and allowing it to run into the town in such a manner was such a departure from defendant's duty to the public as to entitle plaintiff to recover, though his intestate was a technical trespasser.' "

In that opinion, the court further said:

" 'Humanity positively forbids the owner of property that is dangerous to human life and safety to knowingly turn such property loose, even upon his own ground, where it will do mischief even to a technical trespasser. Such conduct is regarded as utterly at war with the principles of humanity, and as smacking of savagery. That the party hurt was a mere trespasser and, otherwise than in this legal aspect, perfectly innocent and harmless, does not excuse the person that injured him by means manifestly injurious to human life and safety. By being technically a trespasser, he does not forfeit all right to protection.'

"Here is an agency possessing most destructive power, which, contrary to manifest duty, is either turned loose, or stationed so that by its own power it may become loose, to run down the grade and collide with a train heavily freighted with human beings, as shown by the testimony. * * *

" 'Such conduct is a violation of a manifest duty to the public, trespassers and all, not to turn such a power loose.' "

This opinion further quotes from the case of Kansas Pacific Railway Co. v. Pointer, 14 Kan. 38 (an opinion by Justice Brewer), to the effect that wantonness is embraced in the term "gross negligence."

A case very much in point is Hobbs v. Blanchard & Sons Co., 78 N. H. 116, 65 Atl. 382, 124 A. S. R. 944, which was an action based upon the negligence of the defendant in permitting dynamite to be left on the ground in a logging camp where a boy, unacquainted with its use and who was a harmless trespasser, caused a piece of it to explode, resulting in his death. In the course of the opinion, the court said:

"As tending to prove that there was active intervention by the defendant which resulted in the boy's death, it is inferable from the case that leaving dynamite upon the ground in a logging camp, where strangers are liable to be, who are unacquainted with its use or its explosive properties and who are not notified of its presence where they are liable to walk, is not only a care less act, indicating a disregard of human life, but an unnecessary and unusual act in the reasonable prosecution of lumbering operations."

In another paragraph of the opinion the court said:

"It owed him some duty with reference to his personal safety. 'Reasonable men might * * * find that, having reason to anticipate a human being might be in a position to be seriously injured by the action contemplated, men of ordinary prudence, having regard to their general obligation to so conduct their lawful business as not to injure others, would not set in motion forces which might have that result, without taking some precautions to prevent it. This would be **true**, whether the persons who might be injured were in legal definition trespassers, licensees or invitees. (Citing numerous cases.)"

Under numerous holdings of this court, especially in the recent case of Padgett v. McKissick et al., 138 Okla. 63, 280 Pac. 409; and also Mead v. Chickasha Gas & Electric Co., 137 Okla. 74, 278 Pac. 286; St. L. & S. F. Ry. Co. v. Davis, 37 Okla. 340, 132 Pac. 337, the rule is established that where there is competent evidence of primary negligence, the question to be determined is one for the jury. Likewise, the question of the proximate cause is one for the jury, where the facts are that reasonable men might differ on the question.

The defendant relies on the holding in the case of United Zinc & Chemical Co. v. Britt, 258 U. S. 268, 66 L. Ed. 615, which was an action for damages for an injury resulting in death caused by the fact that defendants had upon their premises a pool of clear water, inviting to children with that natural disposition to swim. The water contained a well-known deadly poison. The children who bathed in it never returned. The court held that the defendants were not liable, as it was not shown that the pool could be seen from the highway. The court predicated its decision upon the "hard doctrine," as evidenced by the statement that "infants have no greater right to go upon other people's lands than adults, and the mere fact that they are infants imposes no duty upon landowners to expect them and to prepare for their safety." That statement of the rule, if we consider its connotation or what the court suggests, is to a very considerable extent incorrect. It is an absolutely incorrect statement under the rules of negligence relating to "attractive nuisances" for children. It is a correct statement, if we distort the court's meaning, and say that "man's dominion over his land is not absolute, but is qualified by the

principle of reasonably necessary user"; (Hobbs v. Blanchard & Sons Co., supra), and that under certain conditions, which we have already fully discussed in this opinion, the adult's right to recover is just as good as that of the infant, and that both under certain conditions enjoy that right.

The decision is certainly out of joint with the majority of its own decisions on this point, especially the "turntable case", Sioux City & P. & R. Co. v. Stout, 17 Wall. 657, 21 L. Ed 745, and Union P. R. Co. v. McDonald, 152 U. S. 262, 38 L. Ed. 434, 14 Sup. Ct. Rep. 619, and the sound weight of modern authority. The dissenting opinion in that case, by Justice Clarke, in which Justices Taft and Day concurred, is certainly more consistent with the former decisions of that court since 1873 than the majority opinion. Certainly the majority opinion tends to establish a rather inhumane doctrine; and while the case, as a whole, is not directly applicable to the facts in the case at bar, even if it were, we would decline to follow it, but instead would follow the decisions of our own court.

The judgment of the trial court is hereby affirmed.

BENNETT, JEFFREY, and DIFFEN-DAFFER, Commissioners, concur. HERR, Commissioner, concurs in the conclusion.

By the Court: It is so ordered.

Note.—See "Mines and Minerals," 40 C. J. §783, p. 1138, n. 70; §901, p. 1187, n. 57. "Negligence," 45 C. J. §103, p. 720, n. 77.