## EMPIRE GAS & FUEL CO. et al. v. POWELL.

No. 19604. Opinion Filed June 23, 1931.

40

J. W. Finley, Hayes McCoy, Warren T. Spies, and R. E. Cullison, for plaintiffs in error.

Ford & Montgomery, for defendant in error.

RILEY, J. This is an action brought originally by Joe Powell, a minor, through his father, Hayden Powell, as next friend, against the Empire Gas & Fuel Company and Frank Moutray. By amended petition the Empire Natural Gas Company and Cities Service Gas Company were made parties defendant. The action is to recover damages for loss of a portion of a thumb and portions of an index and second finger of the left hand caused by the explosion of a dynamite cap through or as a result of the alleged negligence of defendants.

The amended petition alleged, in substance, that the corporate defendants owned a pump station near the town of Hominy; that the buildings used in connection with said pump station were three large sheet iron buildings, in which were located various pieces of machinery, etc.; that near said building were about six dwelling houses owned by defendant company, which they let and rented to various families; that in said families there were some 10 or 15 children of school age; that defendant Moutray was an employee of said corporate defendants, and was custodian and watchman of the pump station and the buildings used in connection therewith, and also was custodian and watchman of the dwelling houses and had the custody and management thereof; that long prior to September 11, 1926, the date of the alleged injury, defendant Moutray, acting for himself and as agent for his codefendants, had placed in one of said sheet iron buildings a large number of dynamite caps, and after placing said caps therein, said Moutray had, on divers and numerous occasions, opened, and permitted to remain open, the doors and windows of said sheet iron buildings and permitted the small chil-

dren living in the dwelling houses, including his own, to enter the interior of said buildings through the said doors and windows, and that the said Moutray had expressly and impliedly invited said children to enter said sheet iron buildings on numerous occasions; that he well knew that the objects in the interior of said sheet iron buildings were likely to and did attract and allure small children to the interior of said building; and that Moutray opened said doors and windows of said sheet iron buildings and permitted said children to play in the interior of said building on numerous occasions prior to the date of plaintiff's injury; that, prior to September 11, 1926, plaintiff, with his mother, went to visit one of the families, relatives of his, residing in one of the rented dwellings; the name of said family was Wheeler; that while so visiting, he and two small boys of the Wheeler family "were allured and attracted into the interior of one of the sheet iron buildings; that after entering, he and the two Wheeler children were attracted and allured to the box containing the dynamite caps, which box was opened and not enclosed and which box * * * was placed in easy reach and accessible to plaintiff"; that while plaintiff and the two Wheeler boys were attempting to open one of the dynamite caps, it exploded causing the injuries to his hand; that said injuries were not caused by any fault or neglect on his part, but were caused "wholly, directly, and proximately by and on account of wanton and grossly negligent acts of defendants. * * * in that said defendants and each of them failed and neglected to properly and securely store * * * the dynamite caps, * * * and in negligently opening the box containing the said dynamite caps and refusing to close the same, and in permitting the said box to be at a place where it was easily accessible to plaintiff, and in opening and permitting the building to remain open so that plaintiff herein could enter the said building and secure the dynamite caps."

Defendants filed a motion asking that the amended petition be made more definite and certain in some 14 particulars. This motion was overruled, and defendants demurred to the amended petition upon the grounds that it did not state facts sufficient to constitute a cause of action. Demurrers being overruled, defendants answered by general denial, admitting the entry of the building at Hominy pump station by plaintiff, and the procurement therein of the dynamite caps, which he thereafter exploded, thereby injuring himself. They pleaded contributory negligence and further pleaded:

"For further defense, these defendants say that the injuries complained of by plain-

tiff arose out of and are the direct result of his own wrongdoing, consciously and intentionally committed in this, to wit: That on the occasion complained of he burglariously broke and entered the building of another containing goods and property, with the intent to steal therein, and after so entering said building plaintiff did therein steal, take and carry away the property of another of value, to wit, blasting caps stored therein, the exact number these defendants do not know, with intent to convert same to his own use, without claim or right or title thereto, and while converting same to his own use, he caused one of them to explode, thereby in such conversion and as a part of said crime directly and proximately causing his own injury, by reason of which facts plaintiff is barred from complaining of, taking advantage of, or recovering for the injuries of which he seeks to complain."

Plaintiff replied by general denial.

Trial was to a jury, resulting in the verdict for plaintiff in the sum of $15,225. The trial court upon presentation of the motion for a new trial indicated that, unless a remittitur of all in excess of $9,000 be made, a new trial would be granted. The remittitur was made and motion for new trial was overruled, and judgment was entered in the sum of $9,000. From the order overruling the motion for new trial and the judgment, this appeal is prosecuted. The parties will be herein referred to as plaintiff and defendants, as they appeared in the trial court.

The first specification of error is that the court erred in overruling the motion to make the amended petition more definite and certain.

The ruling of the court on this motion cannot be reviewed here for the reason that it is not error occurring at the trial, and the question was not presented to the trial court in the motion for new trial and the appeal was not perfected within six months. The order overruling the motion was entered December 10, 1927, and the petition in error was not filed in this court until July 27, 1928, more than seven months after the ruling was made, so that the first method of having such order reviewed suggested in Aultman & Taylor Machinery Co. v. Fuss, Adm'r, 86 Okla. 168, 207 Pac. 308, is not available to defendants. The question was not presented to the trial court in the motion for a new trial. Thereby the defendants lost their right to have the question reviewed here under the second method pointed out in the above case. The question there involved was an order overruling a demurrer to a petition, but there is no material difference between the order and one overruling a motion to make more definite and certain.

Neither of them raise a question of error alleged to have occurred at the trial. A motion to make more definite and certain is a substitute for a special demurrer at common law. 31 Cyc. 644.

The second specification is based upon the order overruling the demurrer to the petition. The record is in the same condition with respect to this question as on the order overruling the motion to make more definite and certain.

The order overruling the demurrer was entered on January 7, 1928, and, as stated, the petition in error was filed July 27, 1928, more than six months after the date of the ruling. The question was not presented to the trial court in the motion for a new trial. The ruling on the demurrer is not properly here for review. Shaffer Oil & Refg. Co. v. Thomas, 120 Okla. 253, 252 Pac. 41; Commercial Investment Trust v. Ferguson, 96 Okla. 163, 220 Pac. 925; Aultman Taylor Machinery Co. v. Fuss, supra.

The sixth assignment is that the court erred in overruling the defendant's demurrer to plaintiff's evidence, and the seventh assignment is that the court erred in refusing to direct a verdict for defendants. These assignments going to the sufficiency of the evidence may be considered together, and consideration of the same requires an examination of all the evidence. In this we are required to view the evidence in the most favorable light towards plaintiff's case. The rule is that in passing upon a demurrer to evidence, the court will view the same in its most favorable light toward the party against whom the demurrer is directed. That is, all the facts which the evidence in the slightest degree tends to prove, together with all inferences or conclusions which may reasonably or logically be drawn from the evidence are, for the purpose of the demurrer, to be considered as established.

Applying this rule to the evidence of plaintiff in the instant case, we are inclined to hold that the demurrer was well taken and should have been sustained.

We have set out all of the allegations of negligence complained of in plaintiff's petition, and, considering his evidence under the above rule, we think it wholly fails to sustain the same. First, the petition alleges that defendant Moutray, acting for himself and as agent for the other defendants, placed in one of the sheet iron buildings a large quantity of dynamite caps. This, of itself, could not be negligence, for the reason that the building belonged to the corporate defendants, and certainly they had a right to store their own property in their

own buildings. The petition does not allege in what manner the caps were stored except to say that they were in an open box, and were placed in easy reach and accessible to plaintiff. Even this allegation the evidence wholly fails to establish. By plaintiff's evidence, it was shown that the dynamite caps were in the original box or container, and this container was placed in another box which was placed upon the top of a case or cabinet about eight feet high, which was placed against the wall in one of the two rooms of the sheet iron building; that the only door in this room leading to the outside of the building was kept securely locked, and was so locked at the time that plaintiff and the two Wheeler boys secured the dynamite caps. That all of the windows of this room were kept closed and securely fastened; that the building in which the caps were kept was composed of two rooms, with a door in the partition between the rooms; that the room in which the caps were placed was used as a place of storage in which were kept parts for repairs of machinery, etc., and small articles of hardware, such as bolts, nuts, etc. These bolts, nuts, etc., were kept in a rack or case in which were shelves making separate compartments for bolts and nuts of different lengths and sizes. This rack or case was placed against the wall, and on the opposite side of a window from the case or cabinet upon which the caps were kept. Only by means of a ladder or by climbing up the shelves in the bolt rack and across the sill of the window could these caps be reached by the boys. There was no ladder in the building. It was by climbing up the shelves in the bolt rack that the boys obtained the dynamite caps. We think it could hardly be said that the storage of the dynamite caps in this room and in this manner was negligent. The building and all the property therein belonged to defendants, and were in their exclusive custody and control, and no person other than employees of the company had any right or authority to enter the building. The case is entirely different from the cases where dangerous explosive torpedoes, dynamite caps, blasting powder, etc., are placed upon premises owned by another, or in open spaces easily accessible to small children while being used, as was the case in City of Tulsa v. McIntosh, 90 Okla. 50, 215 Pac. 624; Town of Depew v. Kilgore, 117 Okla. 263, 246 Pac. 606; and Cherry v. Arnwine, 126 Okla. 285, 259 Pac. 232.

In Eaton v. Moore, 111 Va. 400, it was said:

"If the manner in which the caps were stored had been averred, it might have disclosed that the defendants were guilty of no actionable negligence with respect to them."

Here the petition does not allege the manner in which the caps were stored, and its defect in this respect cannot be reviewed for the reason hereinbefore stated, but the evidence of plaintiff does disclose the manner in which the caps were stored, and further discloses that defendants were guilty of no actionable negligence in this respect.

It is alleged in the petition that after defendant Moutray placed said dynamite caps in the building, he on divers and numerous occasions opened and permitted to remain open the doors and windows of said buildings and permitted the small children living in the dwelling houses to enter said buildings through the said doors and windows which had been opened by him. The evidence wholly fails to establish this allegation. The evidence of plaintiff tends to establish but one occasion on which Moutray opened a door or window or permitted the children to enter the particular building in which the caps were stored. The Wheeler boys testified that on one occasion Moutray opened a window of the building in the room north of the room in which the caps were stored, and went into said room with his own child and permitted the two Wheeler boys to enter through said window, but at all times while the children were in the building Moutray was present; that while therein one of the boys saw the dynamite caps and inquired of Moutray about them and whether they were dangerous, and that Moutray told them that they would explode if a lighted match or something similar was applied to them, and that he further told them that they were like rattlesnakes, they would not harm them if they left them alone. The evidence wholly fails to show that Moutray on divers and numerous occasions opened the doors and windows of the building in which the caps were stored and permitted children to play in the interior thereof. Nowhere does the evidence of plaintiff show that Moutray on any occasion opened the door of said building or permitted children to play in the building. On the one occasion when the children did enter the building, they were not permitted to remain therein when Moutray was not present. The evidence is wholly insufficient to establish or show that small children were in the habit of entering or playing in said building.

The petition further alleges that Moutray expressly and impliedly invited said children to enter said sheet iron building on various occasions prior to the injury of plaintiff.

The evidence wholly fails to establish this allegation, or show that Moutray at any time expressly invited any children to enter the building where the dynamite caps were stored or any of the other sheet iron buildings. We do not think the evidence sufficient to show an implied invitation. As stated before, only upon one occasion does plaintiff's evidence show that Moutray opened the window and permitted the two Wheeler boys to enter the building. Invitation may be express or implied. It may be implied by a course of conduct, usage, and custom. Certainly there is no evidence of custom or usage such as to establish an implied invitation for children to enter and play within the building.

The evidence as to how plaintiff entered the building and secured the dynamite caps, and his subsequent injury, is that he went with his mother to visit the Wheeler family and arrived at the pump station about nine or ten o'clock p. m., on September 9th, which was Thursday. He did not see defendant Moutray on Friday. On Friday night, he and the two Wheeler boys went into one of the sheet iron buildings other than the one in which the caps were stored; that they went in through a door which was unlocked; did not enter the building on Friday where the dynamite caps were stored. This building was known as the machine shop. On Saturday morning, September 11th, he and the two Wheeler boys examined all of the doors and windows of the building, and found them all closed and securely locked, or fastened except one window on the north end of the building which they found raised about three inches. This window did not lead into the room where the caps were stored, but into the adjoining room. Neither the caps, nor the box in which they were kept, nor the cabinet upon which they were placed, was visible through this window. Plaintiff raised this window up and the three boys entered the room through it and went from there into the room where the caps were kept, whereupon the younger Wheeler boy climbed up by means of the shelves in the bolt rack, climbed or reached across the window, and secured the caps. Plaintiff did not know before he entered the building that the dynamite caps were in the building. There was no testimony that anything whatever in the building was of such a nature as to, or would, in fact, attract the children and cause them to enter the building. There was nothing unusual or out of the ordinary which attracted or caused the plaintiff to enter the building, so it cannot be said that the dynamite caps, or their presence in the building, or any other article or thing therein, was so alluring or attract-

ive as to amount to an invitation by allurement or attraction. Neither of the Wheeler boys testified that the dynamite caps or their presence in the building had anything to do with causing them to enter the building so that there was no evidence whatever of invitation, express or implied. After entering the building and securing the caps, the three boys left immediately, and after going to one of the other buildings, went some distance to a draw or ravine and removed some of the powder from the caps and exploded it by means of a lighted match. In removing the powder they used nails which they had picked up from the ground near the buildings. Plaintiff in removing powder from one of the caps took a rock and drove the nail into the cap, thus causing the explosion which injured his hand. Plaintiff testified that at the time he was injured he had passed the eighth grade in school; that he knew and understood what stealing was; knew and understood that it was wrong to enter the building and take the caps as he had done; knew that the caps were dangerous and would explode, though he thought it was necessary to apply fire to the powder in order to explode the caps; knew that the caps were the property of the company, and that he had no right to take them, and knew that it was wrong to do so, and further testified that he knew and understood that he had no right to enter the building.

This, we think, takes the case out of the attractive nuisance class, where the element of trespass is involved. It cannot be said in the instant case that the trespass was merely technical, or that it was innocent and unconscious.

In Turner v. Durant Cotton Oil Co., 96 Okla. 31, 219 Pac. 892, it is said:

"We believe the rule supported by the great weight of authority and sustained by reason and common sense is: That the owner of premises has the right to place on them such buildings and improvements as are necessary to carry on any legitimate business in which such owner is entitled to engage, and he is under no duty to exercise care to make them safe for the use of others, even children, coming thereon without invitation, authority, or allurement."

The above case was cited with approval in City of Grandfield v. Hammonds, 100 Okla. 75, 227 Pac. 140.

In Nicolosi v. Clark (Cal.) 147 Pac. 971, it was said:

"In the case at bar, the plaintiff was clearly guilty of trespass, if not of peculation. If a boy of ten years of age is not chargeable with knowledge that he has no right to make free with the contents of a

44

box placed such as this, manifestly a box belonging to other people and containing their goods, it can only be because that particular boy is of deficient intellect and understanding. But this is not alleged. Not being alleged, we hold it plain, as a proposition of law, that he was guilty of an unwarranted trespass barring his right of recovery."

In the instant case, the facts are much stronger against the plaintiff than in Nicolosi v. Clark, supra. There the dynamite caps were in a box left in the street, while here they were within the building on defendants' own premises, and could be reached and obtained only by an act which ordinarily would amount to a violation of a criminal law. There is no allegation of deficiency of intellect and understanding of plaintiff, nor is there any proof thereof. On the contrary, the evidence of plaintiff himself shows that he was not of deficient intellect and understanding. This being true, it cannot be said that the trespass was merely technical, unconscious or innocent.

Plaintiff cites a number of cases, some from this state, which hold that the mere fact that a child may commit the trespass upon the property of the defendant will not defeat the right to recover. These cases are all clearly distinguishable, for in them the question of whether or not a plaintiff was able to know and understand the wantonness of the act of trespass was either not raised, or was presented to the jury on conflicting evidence under proper instructions. In the latter class is the case of Folsom-Morris Coal Mining Co. v. DeVork, 61 Okla. 75, 160 Pac. 64, the Oklahoma case cited by plaintiff.

Where the pleadings and evidence are silent on this question, the rule is that a child under the age of 14 years is presumed to be incapable of more than technical trespass. City of Shawnee v. Cheek, 41 Okla. 227, 137 Pac. 724. The attractive nuisance doctrine applies only in favor of children of tender years who are too young to understand and appreciate danger, and excludes those who have reached the years of discretion and are able to know and appreciate danger. 45 C. J. 771.

While there is no definite age fixed at which a child ceases to be entitled to the attractive nuisance doctrine, under the rule announced in City of Shawnee v. Cheek, supra, the question of whether or not children between the ages of seven and 14 years have or possess such discretion as to take them out of the class protected by this doctrine is one of fact to be determined by the jury upon issues formed on that question and

under proper instructions by the court. Applying this rule to the evidence of plaintiff in the instant case, there could be no question of fact for the jury upon this issue, for the reason that the uncontradicted evidence of plaintiff himself showed clearly that he was able to and did understand the wrongful nature of his acts of trespass, and showed that he was able to and did understand the dangerous nature of the dynamite caps, though he did testify that he thought they could be exploded only by applying fire thereto.

The case is, therefore, not within the so-called attractive nuisance or turntable rule. The demurrer to plaintiff's evidence should have been sustained. The evidence of defendants in no way tends to strengthen plaintiff's case, and the request of defendants for an instructed verdict should have been granted.

The case must be reversed, and we deem it unnecessary to consider the assignments of error relative to certain statements of counsel for plaintiff in his opening statement and the introduction of certain evidence and others going to the instructions.

For the errors pointed out, the cause is reversed and remanded, with directions to enter judgment for defendants.

LESTER, C. J., CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur.