## RAMAGE MINING CO. v. THOMAS.

No. 24251.   April 23, 1935.

Cuddie E. Davidson and A. W. Thurman, for plaintiff in error.

Nelle M. Nesbitt, Frank Nesbitt, P. D. Decker and Edward Scott, for defendant in error.

PER CURIAM.   Herbert Thomas, a minor, by Ray Thomas, his next friend, was plaintiff in the court below, and the Ramage Mining Company, a corporation, was defendant below, and they will be so referred to here.

Plaintiff, Herbert Thomas, was injured July 23, 1931, at which time he was eleven years of age, in a dummy elevator, a building approximately 35 or 40 feet high, located on the premises of the defendant at the west edge of the town of Century or Douthat, Okla. Inside the elevator and at the top thereof was a pulley, and at the bottom was another pulley. Around these

two pulleys from top to bottom was an elevator belt, to which belt cups were fastened so that the elevator belt turned around with the pulley. There was an opening at the top and another opening at the bottom. The elevator was used to carry or lift chat and rocks from the mine and conduct the same on a flume to a dump pile away from the mine shaft.

At the time of the accident the mine had not been in operation for several months. Children had been in the habit of playing on the dump piles and around and in the dummy elevator. The evidence of the defendant is that children had been driven off of the premises time after time and whenever observed thereon, but there is no evidence that the child plaintiff was ever told to keep off of the premises or that the other children who testified had received such instructions. That children played on and about the premises and in the elevator is undisputed, although the defendant's evidence is that it did not know any children had ever been in the dummy elevator, which was easily accessible to the children.

Around the top pulley there were boards, and to enter the elevator chain or cups it was necessary for such children to climb about four feet on a small ladder and get upon the same from the top. The evidence is conflicting as to whether the opening at the top was large enough for a child to get down on the cups without removing some of the boards, but if any boards covered the top they need only to be lifted off by such child for the purpose of entering and standing upon the cups. The child would stand upon the cups and another child would turn the pulley and he would thus ride to the bottom. The little boy was so riding on these cups when the elevator belt turned throwing him between the belt and the bottom pulley, breaking his right leg between the knee and hip in two places, crushing and bruising his right knee, breaking his pelvic bone in several places, breaking a lower left rib and seriously injuring him generally. The belt had to be cut in order to remove him.

The elements of negligence alleged are that the defendant failed to fasten the elevator belt so that it could not turn, neglected to close the opening at the top and the bottom of the elevator building, all of which could have been done at a very insignificant and trifling expense; failed and neglected to place a fence about the equipment or to post and maintain danger warn-

ing signs, all of which could have been done at a small and trifling expense; and failed to take any steps to protect the plaintiff, and the plaintiff was a child eleven years of age and knew nothing of the dangers of playing with said equipment.

A judgment was returned in favor of the plaintiff for the sum of $3,000.

The contention of the defendant is that there is no evidence that would warrant the jury in finding the defendant wantonly and willfully injured the plaintiff, and that the defendant owed no duty to the boy except to refrain from wantonly and willfully injuring him; that he was a trespasser and neither an invitee nor a licensee. It is argued that the evidence was not sufficient to show that the plaintiff was a licensee, but that the evidence shows that the plaintiff was a trespasser, and the verdict of the jury was returned upon the theory that the plaintiff was a licensee.

In this connection instruction No. 8 reads:

"You are instructed that if you find by a fair weight and preponderance of the evidence that the plaintiff, Herbert Thomas, and other children had, for a long period of time before July 23, 1931, frequently gone upon the defendant's premises and played in and about defendant's dummy elevator and the equipment therein, without objection of consequence on the part of the defendant, and that the defendant knew, or by the exercise of reasonable diligence could have known, that the plaintiff and other children were making such use of defendant's premises and appliances, then the plaintiff, on July 23, 1931, in going upon the defendant's premises and into their dummy elevator for purposes of play, was a licensee of the defendant."

The instructions are voluminous and unnecessarily long. No plea was made of contributory negligence and this issue was not submitted to the jury. The court did instruct the jury that the duty and obligation of a landowner to his licensee was to refrain from injuring him intentionally or wantonly.

The court further instructed the jury that any omission on the part of the landowner involving a reckless disregard for the safety of his licensee in regard to any dangerous machinery or condition on his premises, and which is obvious to the landowner, may amount to wantonness, and that if they should find that the dummy elevator of the defendant and the machin-

ery and equipment therein was dangerous to children playing in, on or about the same, that this danger was obvious to the defendant, and that said dummy elevator and the said equipment was attractive to children for purposes of play, and was easy of accessibility; that defendant could reasonably and fairly expect the presence of plaintiff and other children in and around said machinery; that the danger to the plaintiff and other children playing in, on or about said dummy elevator was considerable, and that said condition had existed for a considerable period of time before July 23, 1931; that the dummy elevator could have been effectively closed or the machinery therein made immovable at a small or trifling cost and without injuring the said dummy elevator or the machinery therein, or injuring the use thereof; that the defendant knew or by the exercise of ordinary care could have known that plaintiff and other children habitually went into, upon and about said dummy elevator and the machinery therein for purposes of play, and that the landowner or defendant, as a reasonable and prudent person, should have seen the necessity of eliminating the danger to the plaintiff and other children, yet did nothing to do so, such failure on the part of the defendant would be and amount to wantonness, and in that event the verdict should be for the plaintiff.

The court further instructed the jury that while it is the duty of the landowner to refrain from inflicting an intentional or wanton injury upon his licensee, yet, the law required the defendant to use such care for the safety of others in and about the keeping of the dummy elevator as an ordinarily prudent person would have used under the facts and circumstances of this case, and that it is the law of Oklahoma that there is a difference in the degree of care that is required to be exercised in respect to safety from a dangerous machine where a child is involved, and in the case of a mature person; that a higher degree of care is required when the safety of a child is involved; that this higher degree of care is to be measured by the maturity and capacity of the child, and in determining whether or not the defendant has or has not exercised this higher degree of care towards the plaintiff in this case, the jury should not only consider the facts and circumstances of the case, but the maturity and capacity of the plaintiff himself and his ability to ascertain or appreciate the danger, if any, in playing on or with the defendant's machinery and equipment.

The court further instructed the jury, instruction No. 14, as follows:

"If you believe from the evidence that at the time of the alleged injury to the plaintiff he, the said plaintiff, knew and appreciated the danger in playing in said elevator, or, if you believe from the evidence that he knew that defendant company objected to his playing on the chat pile or dummy elevator, if they did so object. in which case you will find for the defendant."

The court further instructed the jury, instruction No. 15, as follows:

"You are further instructed that in determining the question as to whether the plaintiff knew or appreciated the danger of playing in the elevator and riding the belt you may take into consideration the age of the plaintiff and his intelligence and all of the facts and circumstances surrounding his conduct in going into said elevator and bringing about or causing the injury which he sustained."

The remainder of the instructions were the standardized instructions regarding credibility of witnesses, weight of evidence, etc.

To determine whether or not the instructions given by the court fairly presented the issues to the jury, it becomes necessary to discuss, of course, the question of "attractive nuisance" and the duty owed by a landowner to a licensee and to a trespasser. There is no question but that the plaintiff herein was not an invitee. At best he was a licensee and at worst a trespasser.

In the first place the evidence discloses without any question that the dummy elevator in which the accident happened, in its erection and in the machinery contained therein, was the usual type of elevator in use in mines of the character of the defendant's, and that there was no negligence in its construction, and that there was nothing inherently dangerous about the premises to an adult. It was not in that class of premises or instrumentalities such as the maintenance of unprotected high power electric wires, or the keeping of dynamite or high explosives upon one's premises. On the other hand, it was an inherently dangerous plaything as was demonstrated by the accident in question.

It is the contention of the defendant, as stated, that the plaintiff was a trespasser; that a landowner owes a trespasser a

duty in respect to safety from dangerous artificial condition of premises, and no higher duty ordinarily than not to injure him intentionally or wantonly. This is the holding of this court in City of Shawnee v. Cheek, 41 Okla. 227, 137 P. 724, 51 L. R. A. (N. S.) 672, Ann. Cas. 1915C, 290; Jenkins v. Davis, Director Gen. of R. R., 111 Okla. 191, 239 P. 135.

This rule has not been questioned in this state; however, it is pointed out in City of Shawnee v. Cheek, supra, that an act may be wanton and willful where a child of tender years is concerned, although such act would not be so as to an adult. This case involves the question we have before us and contains a thorough discussion of the law of "attractive nuisance" and the duty of a landowner to a trespassing child. It lays down the rule which has been followed by our court ever since, that a mere omission, although superficially characterized by mere thoughtlessness or heedlessness, but, in its deeper explanation, involving a reckless disregard for the safety of merely technical and reasonably anticipated trespassers, such as children of tender years, especially if unconscious trespassers, in respect to obviously and seriously dangerous artificial condition of premises, may amount to wantonness in landowner, and qualifies the statement by this language:

"But the attractiveness and accessibility of the place or thing involving such danger to and the probability of such trespassers, the gravity of the danger in such condition, the length of time such condition has existed, the smallness of cost and of deprivation of beneficial use involved in eliminating same, and the reasonableness of the inference that the landowner, as a person of ordinary sensibilities and prudence, knew or should have known of, and under all the facts and circumstances in the case should have eliminated such danger, are proper considerations in determining whether there was such reckless disregard for the safety of such trespassers."

It is further said:

"A child under seven years of age, or in the absence of evidence of capacity, between seven and 14 years of age, is presumed to be incapable of guilt of more than technical trespass, as affecting question of duty of owner in respect to dangerous condition of premises, and the character of the trespass may be a circumstance to be considered by the jury in ascertaining whether there is contributory negligence."

The rule thus stated has been followed in numerous other cases: Jenkins v. Davis, Director Gen. of R. R., supra; Town of Depew v. Kilgore, 117 Okla. 263, 246 P. 606; Magnolia Petroleum Co. v. Witcher, 141 Okla. 175, 284 P. 297; Empire Fuel & Gas Co. v. Powell, 150 Okla. 39, 300 P. 788; Olson v. Ottertail Power Co., 65 F. (2d) 893.

The question of injury to a child, who is generally a trespasser, sometimes a licensee and rarely an invitee, has been the subject of much confusion, and the doctrine of attractive nuisance has reluctantly been adhered to by the courts of this and other states. There is a distinction to be made in this class of case from those cases where there is an inherently dangerous condition in the premises, a condition dangerous to anybody. In this case the premises were not dangerous to an adult, and there was no negligence in their construction, either of the machinery or the premises.

On the other hand, it is the attractiveness to a child and the probability of injury that makes them inherently dangerous, so that whether it be said that slight negligence or indeed a mere omission may amount to wantonness, or if liability be based upon the ground that the instrumentality on the premises is inherently dangerous to a child of tender years, and, therefore, the want of ordinary care may amount to wantonness, the result is the same.

It is contended herein by the defendant that the court erred in submitting the question of whether the child was a licensee, and it is contended that the child was a trespasser and there was no duty except not to wantonly injure him. We see no distinction as to the duty owed either to a licensee or to a trespasser, except, of course, there is a higher duty owed to a licensee of anticipating his presence and protecting him accordingly by the use of ordinary care against a known danger. Certainly, however, there is no higher degree of care due to a trespasser than to a licensee, and, holding as we do that the instructions herein would have been applicable to the case of a trespasser, we think it becomes immaterial whether or not the court designated the plaintiff a trespasser or a licensee, the rule stated by the court as to liability being the correct rule in a case of this kind as to either a licensee, or a trespassing child, of tender years.

The rule laid down here as to licensee

is not in conflict with that laid down in Julian v. Sinclair Oil & Gas Co., 168 Okla. 192, 32 P. (2d) 31.

This court has considered injuries to children in a great many cases. Those involving injuries which arise by reason of inherently dangerous conditions in the premises are not necessarily in point. However, after careful consideration of the cases cited by counsel for both sides and the reading of various cases dealing with the question, the court is of the opinion that the rule herein stated is the correct rule in a case of this sort, and that the instructions of the court covered the law as it exists in this state.

It is therefore ordered that the judgment of the court below be affirmed.

The Supreme Court acknowledges the aid of Attorneys John H. Halley, Frank Wells, and Streeter B. Flynn in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Halley, and approved by Mr. Wells and Mr. Flynn, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and WELCH, PHELPS, CORN, and GIBSON, JJ., concur.