**FORD v. UNITED STATES.**
No. 4477.

United States Court of Appeals
Tenth Circuit.
Nov. 12, 1952.

W. R. Banker, Muskogee, Okl. (A. Camp Bonds and Andrew Wilcoxen, Muskogee, Okl., on the brief), for appellant.

Paul Gotcher, Asst. U. S. Atty., Muskogee, Okl. (Edwin Langley, U. S. Atty., Muskogee, Okl., on the brief), for appellee.

Before HUXMAN, MURRAH, and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

This action was brought by Perry Ford under the Federal Tort Claims Act, 28 U. S.C.A. §§ 1346, 2671 to 2680, for and on behalf of his minor son, Charles Elliott Ford, who was injured by the explosion of a live mine which remained on the Camp Gruber military reservation in Oklahoma after that camp had been deactivated. During World War II, Camp Gruber was used for the training of a large number of ground troops. In the training, live ammunition of various types was used including antipersonnel mines, some of which were commonly known as booby traps. After the war the army attempted to clear the area of all live ammunition for the purpose of returning the land to civilian use. The injury to young Ford occurred within the reservation boundaries when a booby trap concealed in a tree exploded. The trial court held that the army had used reasonable means to clear the area of live ammunition and concluded that the government owed no further duty to a person upon the reservation for his own purposes and benefit, and entered judgment for the United States.

The Camp Gruber reservation was composed of over 65,000 acres of land, all of which was under fence. A large portion of the area was composed of rough, rocky and mountainous terrain some of which was very heavily wooded with a heavy growth of underbrush and grass. During the training a record was kept by the army officials showing the specific areas where different types of live ammunition were used.

In 1946, the army instituted a detailed and comprehensive program to eliminate live or dangerous ammunition or missiles which remained on the land. Under directions and regulations of the War Department, a Standard Operation Procedure was perfected to be used in the decontamination of Camp Gruber. It provided for the use of large numbers of men who were to traverse in close formations the areas of the camp where live ammunition had been used, for the purpose of locating and marking duds remaining in the area. Demolition squads followed and destroyed such duds. The appellant concedes "that this plan was carefully prepared and one cannot imagine a more complete plan for the thorough decontamination of the area." The procedure was directed by the Commanding Officer of Camp Gruber and the field operations were supervised by subordinate officers who certified to the Commanding Officer that the operations as they related to different areas had been completed according to the plan. Each officer in charge further certified that to the best of his knowledge the area had been cleared of unexploded projectiles.[1]

On November 1, 1948, the property was leased to an association of stockmen for stock grazing purposes. This lease expired on October 31, 1949, and grazing on the reservation was not authorized thereafter. The plaintiff was not a member of the association but grazed a small number of cattle on the land. After the completion of the decontamination program, stockmen and others discovered a substantial number

[1] The certificate covering the area where the injury occurred is as follows:
"Date 14 June 1946
"Certificate No. 15
"I certify that Section XXIII of the danger area as indicated on the attached photomap, Refer: 'Controlled Mosaic, Camp Gruber 1:50,000,' prepared US Army Air Forces, June 1945, has been searched, marked, and policed in concurrence with the approved SOP, and that to the best of my knowledge this area is cleared of unexploded projectiles.
"Clyde M. Combs
Clyde M. Combs
2d Lt, Ordnance Dept
"Approximate grid coordinant of lower left hand corner 81.6–25.7 Work completed 14 June 1946
Total manhours 3172
Number of duds blown 51"

of duds which had not been found during the original search. In April and May of 1949, another crew was detached to Camp Gruber "for the purpose of reinspecting and dedudding that installation." Thereafter the officer in charge of this detachment reported that the inspection had been made and the reservation cleared of all dangerous or explosive materials reasonably possible to detect. The reported duds found included only two antipersonnel mines, neither of which was shown to be of the booby trap design or within the area where the plaintiff's son was injured. There is no evidence that any representatives of the United States knew that there was any live ammunition in the area after the second certificate was made.

On December 9, 1949, young Ford who had lived within 75 yards of the north boundary of the reservation most of his life, accompanied by his cousin of the same age, entered the reservation with a team and wagon through a gate in the fence along the north boundary. They were in search of two cows belonging to the plaintiff which he thought were on the reservation. The cows were not located, and upon the return trip young Ford, in attempting to climb a tree to obtain some mistletoe, encountered in a crotch of the tree a concealed booby trap which exploded and seriously injured him. The principal contention of the plaintiff is that the employees of the United States who were used to carry out the original decontamination program were negligent and did not carry out the program according to the plans, and that the United States was liable for resulting damages. No contention is made that plaintiff's son had a legal right to be upon the reservation. It does appear, however, that the public generally, and particularly those persons living near the north boundary, were accustomed to go upon the premises; that this was known to representatives of the United States in charge of the reservation; and that no serious attempt was made to keep them off. One witness testified that the entry was tolerated because it was impossible to keep the public off. The trial court concluded that the injured boy was either a technical trespasser or a bare licensee. With this conclusion, plaintiff takes no issue.

[1-4] Under the Tort Claims Act, the United States is responsible for injuries caused by the negligent or wrongful act or omission of any employee of the government if a private person would be liable in accordance with the law of the state or the place where the act or omission occurred. In Oklahoma, the owner of premises has no duty to exercise care to make them safe for the use of others who are thereupon without invitation or authority. Kroger Grocery & Baking Co. v. Roark, 171 Okl. 595, 43 P.2d 710; City of Grandfield v. Hammonds, 100 Okl. 75, 227 P. 140; Turner v. Durant Cotton Oil Co., 96 Okl. 31, 219 P. 892; Faurot v. Oklahoma Wholesale Grocery Co., 21 Okl. 104, 95 P. 463, 17 L.R.A., N.S., 136. In Dennis v. Spillers, 199 Okl. 311, 185 P.2d 465, referring to the liability of the owner of premises for injuries to a person while on the premises, the syllabus of the court reads, "Ordinarily, a landowner owes no duty of active care toward one, either adult or infant, who is on his premises without an invitation, express or implied, and neither silence, acquiescence or permission is, alone, sufficient to establish an invitation." See also Texas O. & E. Ry. Co. v. McCarroll, 80 Okl. 282, 195 P. 139. It is the general law, as well as that of Oklahoma, that the owner of premises is subject to liability for bodily harm to a licensee caused by a dangerous condition when the owner knows of the condition and realizes that it involves an unreasonable risk to the licensee and has reason to believe that the licensee will not discover the dangerous condition or realize the risk. Restatement, Torts, Sec. 342; St. Louis-San Francisco Ry. Co. v. Gilbert, 185 Okl. 591, 95 P.2d 123; Long Construction Co. v. Fournier, 190 Okl. 361, 123 P.2d 689.

It has been said in such cases that "The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner or occupant and not to the person injured that a recovery is permit-

ted." St. Louis-San Francisco Ry. Co. v. Gilbert, supra, 95 P.2d at page 126.

■■ The essence of the liability of the landowner for injuries to a licensee is the knowledge of the dangerous condition existing on his land together with the lack of knowledge of such condition on the part of the injured person. For the plaintiff to recover in this case, it must be established that the United States knew that there existed the dangerous condition which caused the injury. The proof of negligence alone is not sufficient. At the time of the injury, we think there is a total lack of proof that representatives of the United States had knowledge of the dangerous condition which caused the injury. As the trial court found, the original decontamination program was substantially carried out, and there is sufficient evidence to sustain this finding. In addition, three years later another search was made and all duds that were located after the completion of the first search were destroyed, and none were thereafter found. The area was again certified to be substantially free from danger. When agents of the United States perfected the Standard Operation Procedure they relied upon the records which had been kept during the training periods to determine where different types of ammunition had been used. The very thorough method of search which was devised depended upon the condition of the terrain and the type of ammunition used in different areas. In the booby trap training program, booby traps were ordinarily loaded in such a manner as not to be dangerous if discharged and they were to be, in any instance, either removed at the end of the training period or exploded. The records did not indicate the training in booby traps extended to the area where the injury occurred and the decontamination operation did not provide for search for them there.

■ At the close of World War II an inherently dangerous condition was known to exist on those areas of Camp Gruber where live ammunition had been used. The United States owed a duty to persons who were actually known to be, or reasonably expected to be within those areas to exercise ordinary care to prevent injury to them. Keck v. Woodring, 201 Okl. 665, 208 P.2d 1133; Ramage Mining Co. v. Thomas, 172 Okl. 24, 44 P.2d 19; Cherry v. Arnwine, 126 Okl. 285, 259 P. 232. This duty could be discharged by giving adequate warning or by the exercise of due care to make the premises reasonably safe. Restatement, Torts, Sec. 342. We agree with the trial court that the decontamination program was substantially carried out and was sufficient to discharge this duty.

■ The appellant urges that the United States should be responsible under a theory of absolute liability or liability without fault. Ordinarily persons having dangerous explosives in their possession and control are required to exercise the highest degree of care not to injure others, particularly those of immature age, but the Oklahoma courts have not said that there is an absolute liability for injuries incurred in cases such as we have here. Lone Star Gas Co. v. Parsons, 159 Okl. 52, 14 P.2d 369; Cherry v. Arnwine, supra; Town of Depew, Creek County v. Kilgore, 117 Okl. 263, 246 P. 606; Folsom-Morris Coal Mining Co. v. DeVork, 61 Okl. 75, 160 P. 64, L.R.A.1917A, 1290. In any event this is not the type of case in which the doctrine could be applied. This is essentially a negligence case.

Judgment is affirmed.

MURRAH, J., concurs in the result.