Joseph **VOYTAS**, Individually and as Administrator of the Estate of Edward J. Voytas, deceased, Plaintiff-Appellant,

v.

**UNITED STATES** of America, Defendant-Appellee.

No. 12271.

United States Court of Appeals Seventh Circuit.

June 26, 1958.

Kenart M. Rahn, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., Richard C. Bleloch and John Peter Lulinski, Asst. U. S. Attys., Chicago, Ill., of counsel, for appellee.

Before DUFFY, Chief Judge, and SCHNACKENBERG and PARKINSON, Circuit Judges.

DUFFY, Chief Judge.

Plaintiff brought this action individually and as administrator of the estate

of Edward J. Voytas, deceased, to recover damages from the United States under the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b) and 28 U.S.C.A. Ch. 171. The trial court made findings of fact and conclusions of law. It decided the issues in favor of the defendant.

Edward, who was the eight-year-old son of plaintiff, was killed while walking upon a sidewalk in Chicago, Illinois, by a metal fragment which was hurled in his direction as the result of an explosion of Composition C-3 which had been detonated by one William Barnabee, aged seventeen. Private Mifflin C. Schat, United States Army, who had been in Chicago on leave from the Demolition and Mine Section of Headquarters Company, Second School Battalion, Engineers Center Regiment, Fort Belvoir, Virginia, had given the explosive to Barnabee.

Fort Belvoir was and is a military installation of the United States and was used in part for training military personnel in the use and handling of explosives and demolition equipment. Schat was a "set-up" man and "ammo" guard at Fort Belvoir. As a set-up man Schat was authorized to handle the equipment used in connection with explosives. As ammo guard his duty was to protect explosives from pilferage. He also assisted a truck driver in returning unused explosives from a demolition area to the storage magazine after regular duty hours.

On or about May 1, 1953, while at the magazine building for the purpose of unloading explosives, Schat went inside the building and stole several packages or blocks of Composition C-3 from shelves where the explosive was stored. He also took some blasting caps and a length of fuse. By concealing the explosives and other items in his clothing, he escaped detection by a guard who was patrolling the outside area of the magazine's wired and locked enclosure. He concealed the stolen material in his foot locker at his quarters for several days before he left for Chicago on leave. When Schat arrived in Chicago he was wearing civilian clothes as he was permitted to do while on leave, and he carried the explosives with him. Severals days later he exploded some of the Composition C-3 upon a railroad track in the presence of William Barnabee and others. The day before he left Chicago to return to Fort Belvoir, he gave Barnabee the remainder of the Composition C-3, and also the remaining caps and fuses. Schat had left Chicago at the time when Barnabee exploded the charge which resulted in young Voytas' death.

The Federal Tort Claims Act gives the District Court jurisdiction of civil actions against the United States for damages for personal injury and death "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

Plaintiff claims negligence by employees of the United States in two locations, Virginia and Illinois. Plaintiff alleges omissions and negligence at Fort Belvoir, Virginia, as to the handling, transporting, storing and guarding of explosives, in particular, Composition C-3; also, in failing to discover that Private Schat had some Composition C-3 in his possession prior to going on leave; in the state of Illinois, the act of Private Schat in giving a package or block of Composition C-3 and caps and fuse to William Barnabee.

Plaintiff suggests that Private Schat should not have been entrusted with the duties of ammo guard. We think the record shows no negligence on the part of Schat's superiors in this respect. Schat was twenty-one years of age. He received his infantry base training in Hawaii. He there received instruction in demolition, booby-trap and mine demonstrations. He served ten months in Korea of which seven months were on the firing line. Upon return to the United States he was assigned to

Fort Belvoir. He there received two or three weeks' instruction as a set-up man. Later he was designated as an ammo guard. In his position as ammo guard Schat was not authorized or expected to handle explosives. His duty was to preserve their custody. There was nothing about his record up to May 1, 1953, to indicate to his superiors that he would be unfaithful to his trust or that he would be likely to steal explosives.

When Private Schat returned to Fort Belvoir at the end of his leave, he was brought before a special Court Martial. He entered a plea of guilty to the charge that on May 11, 1953, he had unlawful possession of two blocks of Composition C-3. He was sentenced to be confined at hard labor for six months and to forfeit $55.00 per month for the same period. The convening authority suspended the part of the sentence relating to confinement. Schat was honorably discharged in 1954 with the rank of Private First Class.

■■■ One of the conditions for liability by the United States for negligent acts or omissions of its employees is that such employee must be "acting within the scope of his office or employment." We agree with the learned trial judge that stealing government property is not an act in the line of duty or within the scope of employment of a member of the armed forces. Nor was he acting in line of duty or within the scope of his employment when he gave some of the stolen goods to a third party.

Title 28 U.S.C.A. § 2671 provides, in part: " 'Acting within the scope of his office or employment', in the case of a member of the military or naval forces of the United States, means acting in line of duty. * * *"

When Schat handed the explosives to Barnabee, he was not performing a service or duty that was in any way incidental to or connected with his position as a member of the United States Army. The applicable rule is stated in Noe v. United States, D.C., 136 F.Supp. 639, 640, where the Court said: "As to such parties, he has while on leave an individual, independent status. * * * This is for the reason that while he is on leave he is not 'acting within the scope of his office or employment,' as required by the Federal Tort Claims Act. * * *"

In Rutherford v. United States, D.C., 73 F.Supp. 867, affirmed, 6 Cir., 168 F.2d 70, a chief petty officer of the Navy assigned to recruiting duty had used his private automobile to travel to a radio station for the purpose of broadcasting a navy recruiting program. When he left the station, he proceeded to drive to his home in another city, and while doing so, was involved in a collision. It was held the navy officer was not, at the time of the accident, acting within the scope of his office or employment.

In Christian v. United States, 6 Cir., 184 F.2d 523, the army furnished an army truck to a soldier to drive other soldiers to an adjoining city. After delivering the soldiers, the driver of the truck proceeded to get intoxicated and caused the death of a deputy sheriff. The Court held the United States was not liable since the soldier's action was a complete deviation from the scope of his authority.

In holding no liability under the Federal Tort Claims Act the court said, in United States v. Lushbough, 8 Cir., 200 F.2d 717, 720–722: "Where an employee causes an injury while engaged exclusively in his own affairs, his employer is not liable although the injury is inflicted by the use of some instrumentality belonging to the employer."

■■■ As we interpret the decision of Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761, the law of the state of Illinois is controlling as to the doctrine of respondeat superior. We think the cases just cited are in accord with Illinois law. It is well established in Illinois that an employee who is on vacation cannot render his employer liable for that which he does in furtherance of his private pursuits during such period. Olender v. Gottlieb, 344 Ill.App. 552, 101 N.E.2d 622.

Plaintiff relies on Globe Indemnity Company v. Forrest, 165 Va. 267, 182 S.E. 215. As heretofore indicated, the law of Virginia is not applicable for the alleged negligent acts of Schat which occurred in Illinois. Moreover, the Globe case was a Workmen's Compensation case. It is of interest to note that an argument based on Globe similar to that presented here, was rejected in United States v. Campbell, 5 Cir., 172 F.2d 500.

■ We turn now to the claim that the United States was liable under Virginia law as to the handling, transporting, storing and guarding of explosives. Although the explosives were owned by the Government, the mere ownership of the explosives is not sufficient to make the United States liable. Dalehite v. United States, 346 U.S. 15, 44, 45, 73 S. Ct. 956, 97 L.Ed. 1427; Ford v. United States, 10 Cir., 200 F.2d 272, 275.

■ The Virginia law is that those who keep explosives must exercise a high degree of care to the end that injuries may not be inflicted. Daugherty v. Hippchen, 175 Va. 62, 7 S.E.2d 119, 120. This case involved a private individual who left unlocked his toolhouse containing dynamite caps, well knowing that children were in the habit of playing near the toolhouse. One of the children took a cap which exploded, inflicting injuries.

■ We accept the view of plaintiff that under the Federal Tort Claims Act, and applying Virginia law, the Government, in storing and transporting explosives, is held to the same high degree of care as was the owner of the toolhouse in Daugherty v. Hippchen, supra, but we agree with the District Court that the evidence in this case shows that those charged with the duty of storing, transporting and safe-keeping of the explosives which were stolen by Private Schat did not fail to exercise that high degree of care required of an individual in Virginia.

The magazine area from which Private Schat stole the explosive was surrounded by wire, locked, inaccessible to unauthorized persons, and guarded at all times by sentries patrolling its perimeter. We conclude that a high degree of care was shown.

Plaintiff relies upon Stewart v. United States, 7 Cir., 186 F.2d 627. Although the writer of this opinion doubts the soundness of that decision, it is nevertheless, the decision of this Court and, if applicable and unreversed, is controlling. However, Stewart is clearly distinguishable. The majority opinion in that case stated the fact to be that possession of smoke grenades—an explosive calculated to do great harm, plainly marked "Fireworks", were stacked in the open, not within a magazine or building. The opinion stressed that the reservation was open to the public and that the outer fence had a large opening therein. There were no guards patrolling the area. The majority opinion stated, page 631: "The sole care exercised by the government as to these highly dangerous explosives in boxes stacked in the open, with the alluring label, 'Fireworks,' plainly visible thereon, was a six foot woven wire fence with three barbed wires on top." The majority in Stewart thought the government should have anticipated that children might steal the "Fireworks."

■ Plaintiff also urges that if Private Schat's locker and belongings in his quarters had been searched, the stolen goods would have been discovered. It was the custom from time to time to conduct routine inspections of bedding, foot lockers, and other personal property of the military personnel, but no such inspection was made during the short period that Schat had the explosives in his possession while at Fort Belvoir. Negligence cannot be based on the proposition that if there had been more frequent inspections the explosive might have been discovered.

■ The same is true as to the claim that Schat was not searched on the day he stole the explosives or when he left on his leave. However, he was not then under suspicion and such searches were not

routine nor required by any rules or regulations then in effect.

Plaintiff complains that the District Court did not consider the effect of Title 50 U.S.C.A. Ch. 8, §§ 131–141. Title 50 deals with "War and National Defense." Chapter 8 is entitled "Explosives; Manufacture, Distribution, Storage, Use, And Possession Regulated." By its terms, Chapter 8 is effective only upon a declaration of war or a declaration by the President or Congress that a state of war or national emergency exists. The possession of explosives by the military forces of the United States is excepted from its provisions. We think that there is nothing about Chapter 8 that can be construed to be the basis for liability by the United States under the Federal Tort Claims Act.

The findings of fact of the trial court are amply sustained by the evidence. The correct principles of law were applied. The judgment dismissing the complaint is

Affirmed.