CITY OF SHAWNEE v. FAULKNER.

No. 34301.   Jan. 22, 1952.

*240 P. 2d 100.*

Randall Pittman, Shawnee, for plaintiff in error.

Wyatt, Wyatt & Edwards, Shawnee, for defendant in error.

O'NEAL, J. This is an action at law in which plaintiff sued to recover damages for personal injuries alleged to have resulted by acts of negligence of the defendant. Wilma W. Faulkner, plaintiff below, recovered a judgment in the sum of $1,750 against the defendant, city of Shawnee, and from the order denying a new trial, the defendant appeals.

The parties will be referred to as they appeared in the trial court.

Plaintiff's petition alleges that the defendant city maintains a lake as a water supply for the city of Shawnee; that in its proprietary capacity it maintains cabin sites at the lake which are rented to citizens of the city on an annual rental basis; that it also maintains a boat house and a boat dock for the use of the general public in storing and launching boats; that it issues boating, fishing and hunting permits to all persons desiring same, charging fees therefor, and that all the revenues so collected are deposited in the general fund account of the defendant city; that on August 26, 1948, between the hours of 8:00 and 8:30 p. m., the plaintiff, her husband and their three minor children went upon the boat dock to fish; that the floor of the boat dock was constructed of planks, one of which has been repaired by placing over a hole in the original plank a defective or thin board, and as plaintiff was assisting in preparing the fishing tackle to be used by her minor sons she stepped backward upon the board used to cover the hole causing it to break, precipitating her right leg into the hole resulting in injuries claimed to be permanent in their nature. Plaintiff further states she did not know the floor of the boat dock was defective and unsafe, but the defective condition was known to the defendant city and it was negligent by not maintaining the boat dock in a reasonably safe condition for the general public using the same, and that such negligence was the proximate cause of her injury and resulting damage.

The defendant's answer is in the form of a general denial and a further plea that the injuries to plaintiff were due to or contributed to by her own neglect and want of care. It pleads that the condition of the boat dock was open to plain view to plaintiff, and that she failed to exercise reasonable precaution for her own safety. It further pleads that the boat dock was primarily constructed and maintained for the benefit of boat owners, and that the plaintiff entered upon the dock, assumed all the ordinary risks attendant upon the use of the premises and, moreover, that the defendant operated the boat dock in its governmental capacity and not in its proprietary capacity.

There is no substantial dispute upon the facts of the case. Indeed, the defendant city, in its brief, says "that in view of the fact that the questions involved in this appeal are largely questions of law, we will not attempt to make a detailed statement of the evidence as contained in the case-made."

It is shown by the record that plaintiff, her husband and their three minor sons, on the evening of August 26, 1948, went to the defendant's lake with the intention of fishing. The lake is owned by the city as a city water supply. The lake is in charge of two of the city's employees who have charge of the various concessions maintained by the city at the lake. These caretakers, so-called, have charge of policing the lake against pollution, and are also in charge of the boat dock and boats, and are authorized to issue boating, fishing and hunting permits, and to collect fees therefor. The city has established 247 building sites around the lake, and various citizens have constructed approximately 130 cabins on said sites for which the city collects an annual fee of $5. All of these license permits are deposited to the credit of the city in its general fund account.

On the 26th day of August, 1948, and for some time prior thereto, the floor of the boat dock had become defective and one of the caretakers had nailed a board over the hole of one of the defective planks. The caretaker had advised the officers of the city of the defective condition of the boat dock, and had requested that material be furnished him to make necessary repairs. No repairs were made prior to the time of plaintiff's injury. As plaintiff was assisting her minor sons preparing their fishing tackle, she stepped on the board which had been placed over the defective plank and her right limb fell through the hole causing the injury which her physician testified damaged the right sacro-iliac joint. An X-ray picture of the injured limb was exhibited to the jury. Neighbors and friends visiting the plaintiff after the accident corroborated her statement that she suffered very severe pain as the result of the injury.

No complaint is made by the defendant city that the amount of the verdict is excessive. The defendant's grounds for reversal are submitted under three propositions which will be referred to in their order.

Defendant's proposition 1 is that under the evidence plaintiff was a trespasser, she not having obtained a fishing permit at the time of the accident, and being a trespasser, defendant owed her no duty other than not to willfully injure her. Though the defendant did not plead the ordinances of the city of Shawnee, the court, over plaintiff's objection, permitted defendant to introduce ordinance No. 744 of the city of Shawnee. Said ordinance, in section 2, provides for the amount of fees to be collected for fishing or hunting permits; that a person not having a permit is subject to fine or imprisonment. Section 3 of the ordinance provides that chlidren under the age of 16, if accompanied by parents having a permit, are not required to have one. The ordinance provides that all funds so collected from the operation of the lake go into the general fund of the city. Defendant contends that inasmuch as plaintiff and her husband did not procure a fishing permit, plaintiff was a trespasser on the boat dock at the time of her injury. Defendant relies on Kaw City v. Johnson, 202 Okla. 6, 209 P. 2d 699; Ramage Mining Co. v. Thomas, 172 Okla. 24, 44 P. 2d 19; Dennis v. Spillers, 199 Okla. 311, 185 P. 2d 465; City of Grandfield v. Hammonds, 100 Okla. 75, 227 P. 140. In each of the cited cases the facts disclose and the court found that the injured party was a trespasser. Upon that basis the court announced the rule as stated in City of Grandfield v. Hammonds, supra:

"Without an invitation, express or implied, no duty of active care arises. Neither silence acquiescense nor permission, however, standing alone, is sufficient to establish an invitation. A license may thus be created but not an invitation."

The entire record negatives defendant's contention that plaintiff was a trespasser. The only attempt to sustain that theory is based on the introduction of the ordinance, above referred

to, but the ordinance does not attempt to define a trespasser or impose fines against them. The ordinance simply subjects one to a fine or imprisonment if he fishes or hunts without first having obtained a permit from the city.

The law is well settled that even if an act be shown to be in violation of an ordinance, such conduct does not place him outside of the protection of the law as to the injury sustained by him through the negligence of another, unless the unlawful act has some causal connection.

Under defendant's proposition 2, it contends the trial court erred in giving the court's instruction No. 5 and in refusing to give the defendant's requested instructions 6, 7 and 8. No argument is presented in defendant's briefs as to the alleged error of the court's instruction No. 5. By reference to the record we find that instruction reads as follows:

"You are instructed that ordinary care is that degree of care an ordinarily prudent person would usually exercise if surrounded by similar circumstances.

"And in this connection, you are instructed that a city or municipality such as in this case, is required by law to use ordinary care in the maintenance of its property."

Moreover, defendant did not assert in its motion for a new trial that instruction No. 5 was erroneous, and in defendant's petition in error, it did not claim error of the court in giving said instruction No. 5. It is obvious that the court gave the instruction under the theory that plaintiff was not a trespasser, and in that view of the law we concur. The defendant's motion for new trial alleges error of the court in refusing to give to the jury defendant's instructions Nos. 1 to 8, inclusive, and in defendant's petition in error it asserts the court erred in refusing to give the following instructions to the jury requested by the plaintiff in error: Instructions Nos. 1 to 8, inclusive.

In defendant's brief it abandoned all alleged errors of the court in refusing to give its requested instructions 1, 2, 3, 4, and 5, but argue error in refusing to give instructions 6, 7 and 8. Defendant's requested instruction No. 1 reads:

"Gentlemen of the Jury, you are instructed to return a verdict for defendant."

Clearly, defendant was not entitled to requested instruction No. 1. Instructions Nos. 1 to 8 were offered as a group, and the error assigned is presented under a single assignment of error. We held in Railway Express Agency v. Stephens, 183 Okla. 615, 83 P. 2d 858:

"Where several instructions are requested and refused, and the refusal of all of the requested instructions is presented for review under a single assignment of error, and any one of said instructions is erroneous, no error is presented."

The rule is also announced in North v. Evans, 199 Okla. 284, 185 P. 2d 901; Cities Service Oil Company v. Boggs, 170 Okla. 335, 40 P. 2d 638. Moreover, as shown by the motion for new trial, no error is alleged by the defendant with reference to the court's instruction No. 5, and as shown by plaintiff's petition in error, no error is alleged with reference to the giving of said instruction No. 5.

Under defendant's proposition 3 it is urged that the court erred in excluding evidence with reference to a physical examination of the plaintiff. The record discloses that during the trial counsel for defendant asked plaintiff whether she would consent to the court appointing two physicians to make a physical examination of her person. Before counsel could object to the question she answered "yes." Plaintiff's counsel then objected to the answer and the court sustained his objection with the following observation:

"The Court: Objection sustained. The statement of the court is that the

plaintiff is under no obligation to submit herself to an examination until the proper situation arises where she might exhibit her anatomy to the jury and then they would have a right to examine her."

Defendant relies on Jewel Tea Co. v. Ransdell, 180 Okla. 203, 69 P. 2d 69, to support its right to inquire of plaintiff whether she will submit to a physical examination by surgeons appointed by the court. That case announces the rule that the defendant is without authority to require plaintiff in an action for injury to his person to submit to a surgical examination either before or during the trial of the case. The case also holds that it was proper to ask the plaintiff whether she would be willing to submit to a physical examination by impartial physicians appointed by the court. When counsel for the defendant asked plaintiff whether she would consent to an examination made by physicians appointed by the court, she stated that she would so consent. Thereafter, upon lengthy cross-examination, she finally answered that she would not consent to such an examination. Having first answered the question "yes" and later "no," the jury had an opportunity to consider the probative value of her answers, as well as her apparent interest and credibility. Clearly, she had the right, under the decisions of this court, to refuse to submit her person to a physical examination by physicians appointed by the court.

Finding no error in the respective rulings, the judgment of the trial court is affirmed.

HALLEY, V. C. J., and CORN, GIBSON, DAVISON, JOHNSON, and BINGAMAN, JJ., concur. WELCH, J., concurs in conclusion.