Donna J. KIMERY, Brenda Kimery, Donna J. Kimery as Mother and Next Friend of Kathryn Kimery and Samuel E. Kimery, Jr., Appellants,

v.

**PUBLIC SERVICE COMPANY OF OKLAHOMA, Appellee.**

**No. 51510.**

Supreme Court of Oklahoma.

Dec. 9, 1980.

Rehearing Denied Feb. 17, 1981.

Don L. Dees, Inc. by Glenn P. Bernstein, Tulsa, for appellants.

Robert W. Blackstock, Bristow, Doerner, Stuart, Saunders, Daniel & Anderson by Stephanie K. Seymour and G. Michael Lewis, Tulsa, for appellee.

IRWIN, Vice Chief Justice:

Samuel E. Kimery was electrocuted when he came into contact with a high-voltage line owned and maintained by Public Service Company (PSC). His survivors (appellants) brought a wrongful death action against PSC. The jury returned a general verdict for PSC and judgment was rendered accordingly. Appellants appealed.

The essential facts are not in dispute.[1] Kimery (decedent) and a co-worker were killed while painting an industrial building in Southwest Tulsa, Oklahoma. PSC had installed uninsulated high-voltage lines to

---

1. This cause has been before this court prior to the instant appeal. See *Kimery v. Public Service Company of Oklahoma*, (Okl.) 562 P.2d 858 (1977).

No contention is made that Oklahoma's comparative negligence statutes, first enacted in 1973 (23 O.S.1973 Supp. § 11 and 12), have any bearing on this case.

service the metal building being painted. The lines ran adjacent to and approximately ten feet away from the building. Decedent and his co-worker were repeatedly warned by the superintendent of the company whose building was being painted that the lines were dangerous. While moving an aluminum extension ladder alongside the building, contact was made between the high voltage lines and the ladder and decedent and his co-worker were electrocuted.

Appellants alleged that decedent's death was the result of negligence on the part of PSC in failing to safely locate the high-voltage lines despite the foreseeability of the presence of workmen dangerously close to such lines, and in failing to adequately warn of the hazard created by them. PSC's primary defense rested on a claim of ordinary contributory negligence and contributory negligence *per se* resulting from decedent's alleged violation of 63 O.S.1971 § 981 et seq., commonly referred to as the "six-foot law".

Appellants first contend that the "six-foot law" is unconstitutional and that it was reversible error to instruct the jury that a violation of the "six-foot law" by the decedent would constitute negligence *per se.* The pertinent provision of the "six-foot law" is as follows:

"No person, firm, corporation or association shall, individually or through an agent or employee and no person as an agent or employee of any person, firm, corporation or association, shall perform or permit any agent or employee to perform any function or activity upon any land, building, highway or other premises, when it is possible during the performance of such activity for any person or employee engaged in performing work connected with or related to such function or activity to move or to be placed in a position within six feet of any high

voltage overhead electrical line or conductor, or when it is possible for any tool, equipment, machinery or material to be used by any such person or employee to be brought within six feet of any such overhead high voltage line or conductor through any lateral, vertical or swinging motion during the performance of such function or activity." 63 O.S.1971 § 981.

Appellants assert that this statute is unconstitutional for three reasons: first, that it fails to require an electrical utility company to notify the public of the presence of high-voltage lines; second, that the word "possible" makes the statute unconstitutionally vague and uncertain; and finally that the statute violates Article 5, § 51 of the Oklahoma Constitution [2] by creating an impermissible immunity from liability.

A legislative act is presumed to be constitutional and will be upheld unless it is clearly, palpably and plainly inconsistent with the Constitution. *Matter of Daniel Deborah and Leslie H.,* Okl., 591 P.2d 1175 (1979); *In re Napier,* Okl., 532 P.2d 423 (1975). Statutes should be construed whenever possible so as to uphold their constitutionality. *City of Norman v. Liddell,* Okl., 596 P.2d 879 (1979); *Newman v. Tax Commission,* Okl., 596 P.2d 530 (1979); *Post Oak Oil Co. v. Okla. Tax Commission,* Okl., 575 P.2d 964 (1978); *Ruble v. Redden,* Okl., 517 P.2d 1124 (1973).

We find it unnecessary to consider the duties and responsibilities of an electrical utility in reference to notifying the general public of the presence of high-voltage lines or to determine the effect of the failure of PSC to notify the general public concerning the presence of the high-voltage line in the case at bar. The following uncontroverted and corroborated testimony was given by the superintendent of the plant where the accident occurred:

"I told them to be careful several times and the last time that I was up there in

**2.** Article 5, § 51 of the Oklahoma Constitution provides:

"The Legislature shall pass no law granting to any association, corporation, or individual any exclusive right, privileges, or immunities within the State."

the afternoon, one of them was on the ladder painting. The other was standing there holding it. He was about halfway up the ladder and I was going back to my office and I told them in words and a voice that anybody could hear. I said, 'Man, for once more, whatever you do be careful. I don't care about the east side, stay away from the east side,' and I went to my office.

\* \* \* \* \* \*

"I told them the wires are hot. I said, 'Whatever you do, be careful;' and I pointed up and I said, 'Those wires are hot' and I said 'I don't care about the east side—how it looks—just stay away from it.' "

■ Unconstitutionality of a statute may not be urged by resort to hypothetical applications (*In Re Napier*, supra). Imbedded in traditional rules governing constitutional adjudication is the general principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the court. *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

■ There is sufficient competent evidence for the jury to find that decedent was told and had knowledge of the presence of the high-voltage lines. Appellants will not be heard to challenge the alleged constitutional infirmity of § 981 because it does not require an electrical utility to notify the general public of the presence of high-voltage lines.

Appellants next contend that the statutes are unconstitutionally vague because in many situations in which it is "possible" to intrude upon the protected space it may be improbable or even inconceivable that the protected space would be violated.

■ The fact that § 981 prohibits activity whenever it is "possible" during the performance of such activity to come within the "six-foot area" does not make the enactment unconstitutionally vague or uncertain. We are not concerned here with a hypothetical situation or a conceivable uncertainty but with a factual circumstance where the six-foot zone has actually been invaded. Whatever may be hypothetically argued about the vagueness of the statute when applied to other facts, the statute must be measured by decedent's conduct in the case at bar. Appellants may not successfully challenge the statute for vagueness if it clearly applies to his conduct. *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439. It is clear that decedent invaded the six-foot zone with a metal ladder, or something in contact with the ladder came in contact with the high-voltage line, and such conduct violates the statute. The vagueness, if any, of § 981 may not inure to the benefit of appellants.

■ Appellants contend that when the trial court's instructions on contributory negligence that violation of § 981 constitutes negligence *per se*, are considered in connection with the general rule that a person responsible for a violation of law usually cannot recover damages where such violation contributed as a proximate cause to the injury,[3] § 981 and 986[4] unconstitu-

---

**3.** It is a general rule of law that a plaintiff responsible for a violation of law usually cannot recover damages where such violation contributed as a proximate cause to the injury of which he complains. *City of Shawnee v. Faulkner*, 205 Okl. 647, 240 P.2d 100 (1952). The settled rule is that violation of a city ordinance constitutes negligence *per se* where the other elements of actionable negligence are present. *Foster v. Harding*, Okl., 426 P.2d 355 (1967).

**4.** 63 O.S.1971, § 986, provides for the temporary clearance or de-energization of high-voltage lines when a person or entity proposes to conduct an activity in close proximity to such line, and making arrangements for the payment for such clearance and de-energization.

This statute provides that "unless and until arrangements satisfactory to the operator of the high-voltage conductors for such payment

tionally [5] shields an electric utility from tort liability. Appellants argue that this immunity protects one class (electric utilities) against another class (the public) without sufficient justification.

The inhibition against special privileges and immunities contained in Art. V, § 51, was intended to preserve equality between citizens, *State v. Fletcher*, 168 Okl. 538, 34 P.2d 595, 597 (1934), who are similarly situated, *Noble State Bank v. Haskell*, 22 Okl. 48, 97 P. 590 (1908). Where a statute touches upon the public health and welfare, the statute cannot be deemed unconstitutional class legislation, even though a specific class of persons or businesses is singled out, where the legislation in its impact is free of caprice and discrimination and is rationally related to the public good. *Lee Optical v. Williamson*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563. The legislation in question does not by its terms confer any immunity from tort liability upon electric utilities; it does not operate to the disadvantage of some particular class; nor is it claimed to impinge upon a fundamental right explicitly or implicitly protected by state or federal constitution. The law applies to all persons who may work in the vicinity of high-voltage electrical conductors and imposes upon them a burden of care for the purpose of promoting public safety and welfare. An electric utility must continue to exercise a high degree of care in building, operating and maintaining its equipment. See *Rotramel v. Public Service Company*, Okl., 546 P.2d 1015, 1017 (1975).

The statutory burden of care imposed upon the public is intended to promote the safety and welfare of the general public by reducing the number of accidents involving electricity. The legislature determined it is far more effective and in the public interest to impose this burden on those persons who engage in activities near power lines than to require the utilities to maintain constant surveillance over the thousands of miles of power lines which it maintains. We find the legislation in question is free of caprice and discrimination and is rationally related to the public good. It does not contravene Art. V, § 51 of the Constitution.

Appellants challenge the trial court's rejection of their requested instruction which reads:

"You are further instructed that where there are no eye witnesses to an accidental death, the love of life speaks as a silent witness against the assumption of risk, against contributory negligence, and against suicide."

Appellants argue that by refusing this "love of life" instruction the district court effectively eased Public Service's burden of proving contributory negligence.

Assuming, arguendo, that some form of "love of life" instruction may have been proper if suicide had been an issue, suicide was not raised as a defense in the trial court. And, although the burden was upon PSC to prove contributory negligence and assumption of risk, appellants were not entitled to an instruction that there was a presumption that decedent was not contributorily negligent and did not assume any risk. The trial court did not err in refusing to give appellants' requested "love of life" instruction.

Appellants contend the trial court erred in giving instruction number 8 in that it is misleading since it fails to specifically set out Public Service's burden of proof on the contributory negligence defense. That burden was clearly set forth, however, in instruction number 1:

"The burden of proof is upon the plaintiff to establish by a preponderance of the evidence all of the material allega-

have been made, such operator shall be under no duty to provide clearances as set out herein."

5. See footnote 2.

tions of the petition, and unless the plaintiff has proved these allegations by a preponderance of the evidence, your verdict must be for the defendant.

Likewise, the burden of proof is upon the defendant to establish the affirmative defense of contributory negligence but in passing upon the issues of contributory negligence, you may take into consideration all of the evidence admitted and bearing thereon, whether offered on the part of plaintiff or the defendant."

A judgment will not be disturbed on appeal by allegedly erroneous instructions where *as a whole* they fairly present the law applicable to the issues raised by pleadings and the evidence. *Smith v. United States Gypsum Co.*, Okl., 612 P.2d 251 (1980); *Bentley v. Hardin*, Okl., 577 P.2d 471 (1978).

The appellants' remaining allegations of error are directed to the district court's rejection of certain instructions concerning the defendant-utility's burden of care, and an instruction given on intervening cause. After reviewing the record and instructions as a whole, we cannot say that it clearly appears the instructions given or refused have caused a miscarriage of justice, *Safeway Stores, Inc. v. Keef*, Okl., 416 P.2d 892 (1966), mislead the jury, *Wilkerson Motor Co., Inc. v. Johnson*, Okl., 580 P.2d 505 (1978), or led to a different verdict than would have been rendered if the alleged error had not occurred. *Missouri-Kansas-Texas R. Co. v. Harper*, Okl., 468 P.2d 1014 (1970).

AFFIRMED.

LAVENDER, C. J., and WILLIAMS, BARNES, SIMMS, DOOLIN, HARGRAVE and OPALA, JJ., concur.

HODGES, J., dissents.