In the Matter of the GROSS PRODUCTION AND PETROLEUM EXCISE TAX PROTEST OF ARKLA, INC. Regarding the Settlement Payment made to Marathon Oil Company,

NORAM ENERGY CORPORATION, formerly Arkla, Inc., Appellant,

v.

OKLAHOMA TAX COMMISSION, Appellee.

No. 85309.

Court of Appeals of Oklahoma, Division No. 3.

Jan. 30, 1996.

---

Kenneth L. Hunt, J. Kevin Hayes, Tulsa, for Appellant.

Gregory K. Frizzell, Kathryn Bass, Oklahoma City, for Appellee.

*OPINION·*

HANSEN, Presiding Judge:

Appellant, Noram Energy Corporation, formerly Arkla, Inc., hereafter "Arkla", seeks review of an order of the Oklahoma Tax Commission which denied its protest to a proposed gross production tax and petroleum excise tax assessment issued pursuant to 68 O.S.1991, § 1009(g). The proposed assessment was issued by Appellant, the Oklahoma Tax Commission, hereafter "Commission", on February 22, 1989 against Arkla, after an audit of Arkla, for a total amount of $11,893,-731.03. This amount included gross production taxes due and petroleum excise taxes due, with interest and penalties thereon, and is based upon thirty-eight alleged "take-or-pay" settlements between Arkla, a gas purchaser and seller, and certain natural gas producers. Upon Arkla's motion, the Administrative Law Judge (ALJ) of the Commission separated Arkla's protest to the assessment into 38 separate cases based upon the 38 separate settlement agreements, which are designated as P–89–166–A through P–89–166–LL. The present appeal, P–89–166–R, involves Arkla's protest of the assessment against settlement proceeds paid to the gas producer, Marathon Oil Company (hereafter "Marathon").

In Order No. 95–02–21–003, Commission adopted the Findings, Conclusions and Rec-

ommendations of the ALJ, an Errata Sheet and the Order Denying Motion for Reconsideration and Rehearing. Order No. 95–02–21–003 does not specify an amount of taxes, penalty and interest which are being assessed.[1] This Court has jurisdiction to review this Order under 68 O.S.Supp.1994, § 225. The report of the ALJ includes findings of fact which are universal to all 38 proceedings and includes findings of fact which apply to this particular proceeding involving the Marathon settlement.

The ALJ concluded in his report that a $12,500,000.00 dollar refundable, recoupable prepayment made by Arkla to Marathon in 1987, was a "take-or-pay" payment and taxable under 68 O.S.1991, § 1009(g). Because the prepayment settled take-or-pay claims under contracts covering property in Oklahoma, Louisiana, Arkansas and Texas, the ALJ concluded the Business Tax Division's proposed assessment needed to be adjusted based on an allocation of the prepayment to take-or-pay deficiencies in these states.

On appeal, Arkla argues Commission's order is not supported by substantial evidence. Arkla maintains it produced *uncontroverted* evidence that the entire prepayment made to Marathon was not a "take-or-pay" payment which relates to the Oklahoma contracts and therefore, is not subject to 68 O.S.1991, § 1009(g). Arkla contends the prepayment relates only to deficiencies under another contract included in the settlement, the Eugene Island Contract. If the assessment under § 1009(g) is proper, Arkla wants the penalties and interest waived under 68 O.S. 1991, § 220(a). Arkla further maintains the assessment violates the substantive due process and equal protection guarantees of the 14th Amendment of the United States Constitution, violates the Commerce Clause of the United States Constitution and violates Art. 10, § 5 and Art. 5, § 59 of the Oklahoma Constitution. Arkla argues the invalidity of the gross production tax assessment requires us to hold the petroleum excise tax assessment invalid.

 This Court will review the entire record made before an administrative agency acting in its adjudicative capacity to determine whether the findings and conclusions set forth in the agency order are supported by substantial evidence. *Dugger v. State ex rel. Oklahoma Tax Commission,* 834 P.2d 964 (Okla.1992). If the record contains substantial evidence in support of the facts on which the decision is based and the order is otherwise free of error, the order will be affirmed. *Dugger,* at 968; *In the Matter of the Sales Tax Protest of Finaserve, Inc.,* 828 P.2d 440 (Okla.App.1991). A protesting taxpayer has the burden of proving a tax assessment is erroneous. *Enterprise Management Consultants, Inc. v. State ex rel. Oklahoma Tax Commission,* 768 P.2d 359 (Okla.1988).

The ALJ found that in the early 1980's, in response to dropping gas sales and claims by producers against Arkla, Arkla entered into negotiations with its producers to reform its gas purchase contracts. The central focus of these negotiations was the claims of the producers that Arkla owed payments for deficiencies under the pricing provisions and the quantities provisions of the gas purchase contracts. Arkla denied it was liable under the quantities provisions. To settle the disputes, Arkla made either recoupable refundable or recoupable non-refundable prepayments to the producers and released from the contracts, the gas which was in excess of Arkla's needs.[2] In return, the producers released

---

1. In Commission's brief, Commission states it was advised by Arkla that Marathon had refunded the $12.5 million dollar prepayment and that Commission has revised the assessment to eliminate the taxes on the refunded amount and has computed interest from the date taxes were due to the date the taxes would have been refundable if they had been paid. Commission states the amounts now at issue are interest of $1,093,-303.93 and penalty of $88,562.50. The appealed-from order does not assess any amount against Arkla but simply adopts the findings of

fact and conclusions of law of the Administrative Law Judge.

2. In general, the term "recoupable proceeds" refers to those proceeds received by the producer under the take-or-pay settlement agreement with respect to which the producer has an obligation to deliver gas to the purchaser under a gas purchase contract. "Nonrecoupable proceeds" refers to those proceeds received by the producer from the purchaser under the take-or-pay settlement agreement with respect to which the producer has no additional obligation to the pur-

the gas sold to third parties from Arkla's contract commitments, gave credits against minimum purchase obligations for the gas sold to third parties and *waived any past take or pay claims.*[3]

The Marathon settlement was effected by the execution, on February 24, 1987, of a settlement agreement, an omnibus gas purchase contract amendment, a release agreement, and a release gas purchase contract. The settlement covered 18 gas purchase contracts between Arkla and Marathon, eight of which covered property located in Oklahoma.[4] The contracts contained "take-or-pay" provisions. In the settlement agreement, the 18 contracts were specified by three groups: the "Subject Contracts", the "Wilburton Contracts" and the "Eugene Island Contract". The eight Oklahoma gas purchase contracts fell within the groups "Subject Contracts" and "Wilburton Contracts".

The preamble to the Marathon settlement agreement states:

WHEREAS, by certain gas purchase contracts described on Exhibit "A", "B", and "C" attached hereto, and made a part hereof Seller agreed to sell and Buyer agreed to purchase production from natural gas properties committed to the gas purchase contracts.

WHEREAS, such contracts described on Exhibit A, as the same may have heretofore been supplemented, modified and amended, are hereinafter referred to as the Subject Contracts; such contracts described on Exhibit B, as the same may have heretofore been supplemented, modified and amended, are hereinafter referred to as the Wilburton Contracts; such contract described on Exhibit C, as the same may have heretofore been supplemented, modified, and amended, are hereinafter referred to as the Eugene Island Contract; and

WHEREAS, a controversy has arisen between Seller on the one hand and Buyer on the other hand concerning the take-or-pay, minimum take, and other take deficiency obligations of Buyer under the provisions of the Subject Contracts, the Wilburton Contracts, and the Eugene Island Contract;

WHEREAS, as a result of the aforesaid controversy regarding one of the said gas purchase contracts, Seller instituted against Buyer that certain action entitled "Marathon Oil Company v. Arkla, Inc.," No. 85-3382 in the docket of the United States District Court for the Western District of Louisiana, Lafayette-Opelousas Division (said action hereinafter referred to as the "Judicial Proceeding"); and

WHEREAS, after balancing their hope of prevailing in, against the possibility of losing, the aforesaid dispute, and in order to avoid further litigation, to limit the hazards and uncertainties of litigation and in order to buy their peace, the parties have freely and voluntarily agreed to settle and compromise all aspects of the disputes upon the terms and conditions hereinafter set forth; * * *

The settlement agreement then provides Arkla shall pay Marathon a lump sum prepayment of $12,500,000.00, which "shall constitute a payment in advance for natural gas to be delivered from properties committed to the Subject Contracts, and Wilburton Contracts." Arkla was entitled to *fully recoup the prepayment* in gas from January 1, 1992 through December 31, 1994. Under the settlement agreement, Marathon was required to refund any unrecouped balance of the prepayment on or before April 1, 1995. Ac-

chaser. See Brown and McGregor, *Fallout From the Take-or-Pay Wars: Gross Production Tax on Proceeds Received in Settlement of Take-or-Pay litigation,* 43 Okla.L.Rev. 457 (1990).

**3.** In a typical gas purchase contract, under a "take-or-pay" or "deficiency" clause, a gas purchaser is obligated to take and pay for, or pay for whether or not taken, a specific volume of gas during specific time periods. The clause apportions the risks of natural gas production and

sales between the buyer and seller, with the seller bearing the risks of production and the buyer bearing the risks of market demand. *Supra,* footnote 2, at page 457.

**4.** Four contracts covered property located in Louisiana, three contracts covered property in Arkansas, two contracts covered property in Texas, one of the contracts covered property in both Arkansas and Louisiana, and eight of the contracts covered property located in Oklahoma.

cording to the parties' appeal briefs, Marathon did in fact fully refund the $12.5 million dollar prepayment to Arkla by April 1, 1995.

Marathon waived any and all take-or-pay and minimum take, as well as all other take deficiency claims "relating to or arising out of any failure to take gas or to pay for gas not taken by Buyer in respect of all natural gas available for production from *all properties committed to the Subject Contracts, the Wilburton Contracts* and any and all other gas purchase contracts" between Arkla and Marathon from the effective date of the contracts through December 31, 1986. The parties waived, effective the date the permanent abandonment order becomes non-appealable, any and all claims, except for outstanding accounts receivable balances other than take-or-pay, relating to or arising out of the Eugene Island Contract from the effective date of the contract through December 31, 1986. Arkla denied all liability and the parties agreed that the settlement agreement constituted a compromise of disputed claims.

The parties agreed to extend the terms of any gas purchase contract that was set to expire prior to January 1, 1993, except the Eugene Island Contract, for an additional 5 years. The omnibus gas purchase contract amendment covered the Subject Contracts and the Wilburton Contracts and amended the quantities provisions and pricing provisions of the contracts. Under the amendment, the parties agreed to execute a release agreement providing for the release of all gas in excess of that requested by Arkla from commitment to the contracts. The amendment also amended the physical connection provisions of the Wilburton Contracts.

Under the release agreement, all gas in excess of the volumes requested by Arkla from the Subject Contracts and the Wilburton Contracts was released from commitment to the contracts for the period of January 1, 1987 through April 1, 1994 and continuing on a month to month basis thereafter. Under the release gas purchase contract, Marathon tendered for sale to Arkla and/or assigned to Arkla for sale to third parties the volumes of gas released from commitment to the contracts.

Subsection (g) of 68 O.S.1991, § 1009 provides:

> (G) Pursuant to the provisions of a gas purchase contract or agreement, if the first purchaser makes payments to the producer as a result of the failure or refusal of said purchaser to take gas, said payments, for purposes of this article, are hereby deemed to be part of the gross value of gas taken according to said contract or agreement. The gross production tax shall be calculated upon the gross value, including said payments, in accordance with the provisions of this article. Gas on which the gross production tax has been paid in this manner when taken by said purchaser shall be reported as gas on which said tax has been paid. If said gas, which corresponds to such payments, is not taken but payments therefor are retained by the producer, then said payments are hereby deemed to be a premium on gas which was taken under said contract or agreement.

The Gross Production Tax Code, 68 O.S. 1991, § 1001 et seq., provides for the levy of a tax on the gross value of production of oil and gas. "The tax is not added to the price of the gas, as is a sales tax, but rather, it is deducted from the first sales proceeds of the gas." *Exxon Corporation v. Oklahoma Tax Commission*, 873 P.2d 306 (Okla.App.1993). Under subsection (g) to § 1009, added to the Code in 1983, take-or-pay payments and payments made to settle take-or-pay disputes, which are made by a purchaser are deemed part of the gross value of the gas taken under the contract and thus subject to the gross production tax. *Exxon*, at 309.[5]

The main thrust of Arkla's appeal is its argument the record contains *uncontroverted* evidence that the recoupable, refundable prepayment it made to Marathon on February

5. In *Exxon*, the purchaser was sued by the producer for allegedly failing to comply with a take-or-pay provision. The purchaser made a one-time, nonrecoupable nonrefundable cash payment to settle the lawsuits. It was not a payment for future gas purchases and it did not terminate the existing gas purchase contract. The Oklahoma Tax Commission assessed gross production taxes against the settlement. The purchaser claimed the entire settlement was interest on the deficiencies and therefore, not taxable. The Commission disagreed and this Court affirmed.

24, 1987, was not a take-or-pay payment which relates to deficiency claims under the *Oklahoma* contracts but was actually made for the purpose of settling the deficiency claims related only to the *Eugene Island Contract,* which covered properties outside the State of Oklahoma. The ALJ stated he relied upon the *language of the contract* as evidence of the nature of the prepayment. Although Arkla presented the testimony of its employees that the only deficiencies which Marathon asserted related to the Eugene Island Contract deficiencies, Commission did present evidence which controverted this assertion: the language of the settlement agreement and related documents. Thus, Arkla's contention the prepayment is not taxable as shown by *uncontroverted* evidence, is without merit.

█ Arkla argued at the hearing that the total amount of the prepayment is allocable to non-Oklahoma properties for taxation purposes. The ALJ concluded the settlement agreement evidences the fact that Marathon made take or pay deficiency claims in regard to the non-Oklahoma properties *and to the Oklahoma properties* and that accordingly, an allocation of the prepayment is warranted. The ALJ held that portion of the prepayment which is attributable to the Oklahoma properties is subject to Oklahoma gross production tax and petroleum excise tax. He *found* the prepayment was made to Marathon as a result of Arkla's failure or refusal to take gas pursuant to the quantities provisions of the gas purchase contracts. He based his determination on the preamble of the settlement agreement which references the controversy and litigation concerning Arkla's obligations under the quantities provisions, on the portion of the settlement agreement wherein Marathon waived any and all take-or-pay claims against Arkla, and on the paragraph of the settlement agreement wherein Arkla is afforded the right to recoup the total amount of the prepayment.

The ALJ noted neither party had presented a basis for allocating the prepayment

between the Oklahoma and non-Oklahoma properties and that neither Section 1009(g) nor Commission rules address the allocation of a take-or-pay deficiency payment between Oklahoma and non-Oklahoma properties. Because the Business Tax Division did not allocate any portion of the prepayment to non-Oklahoma properties and the settlement agreement indicates Marathon made take-or-pay deficiency claims in regard to non-Oklahoma properties, the ALJ determined the Business Tax Division's failure to allocate a portion of the prepayment was incorrect. The ALJ directed Arkla to submit a proposed allocation based on the ratio of the deliverability of the Oklahoma properties to the deliverability of all of the properties.[6] The ALJ noted adjustment of the proposed assessment is necessary to eliminate any tax, penalty or interest assessed on the amount of the prepayment which is attributable to deficiencies on non-Oklahoma properties. Subject to this and other adjustments, the ALJ denied Arkla's protest.

At the hearing, an Arkla representative testified that in the months and years preceding the settlement, Arkla had received letters from Marathon asserting deficiencies and interest relating to the Eugene Island Contract. The Eugene Island Contract involves properties located offshore Louisiana. He testified none of these letters reference any deficiencies relating to the Oklahoma contracts. He testified Marathon used these claim letters in their pleadings associated with the "Judicial Proceeding" (the Louisiana lawsuit) which claimed in excess of $21 million dollars for deficiencies and interest on the Eugene Island Contract. He stated the Eugene Island wells had a tremendous productive capacity and the Contract had very onerous take obligations. He testified the only disputes with regard to the Oklahoma contracts involved the timing and cost of well connections for the Wilburton Contracts. He stated Marathon never made any deficiency claims for failure to take gas with regard to

---

**6.** In response to the ALJ's direction, Arkla responded that *no allocation is appropriate* because the evidence established that Marathon did not assert any take-or-pay claims regarding properties in Oklahoma committed to the contracts which are the subject of the settlement. Thus, Arkla did not provide the ALJ with an allocation schedule or ratio upon which an allocation could be made.

any Oklahoma property and that the Oklahoma contract prices were significantly lower than the Eugene Island Contract and were submarket. Arkla also presented the affidavit of its principal settlement negotiator that Marathon made no deficiency claims related to wells located in Oklahoma, either prior to or subsequent to the settlement. Arkla contends the language of the settlement agreement wherein Marathon waived all take-or-pay claims regarding the Oklahoma contracts is just "boilerplate".

The settlement contract, however, lists the contracts, including the Oklahoma contracts, and states that a controversy has arisen between the parties concerning take-or-pay, minimum take, and other take deficiency obligations of Arkla under the contracts. The agreement notes that with regard to one of the contracts, the Eugene Island Contract, Marathon had filed suit against Arkla in Louisiana. The prepayment was deemed a payment in advance for gas to be delivered from the Subject Contracts and the Wilburton Contracts. Marathon waived any and all take-or-pay claims with respect to gas from properties committed to the Subject Contracts, the Wilburton Contracts and the Eugene Island Contract. The parties agreed to dismiss the Louisiana lawsuit.

Although the testimony of Arkla's witnesses at the hearing supports Arkla's contention Marathon had not lodged a take-or-pay claim against Arkla on the Oklahoma contracts, the language of the settlement agreement clearly states a controversy had arisen between the parties concerning the take-or-pay obligations of Arkla under the Oklahoma Contracts. Further, in the agreement, Marathon waived any and all take-or-pay claims relating to any failure to take gas or to pay for gas not taken from all properties committed to the Subject Contracts and the Wilburton Contracts from the effective date of the contracts through December 31, 1986. There is substantial evidence in the record from which the Commission could conclude a portion of the prepayment made by Arkla to Marathon was made to settle potential take-or-pay claims under the Oklahoma contracts.

In *Exxon Corporation v. Oklahoma Tax Commission,* 873 P.2d 306, 309 (Okla.App. 1993), this Court noted Commission's adherence to the rule that whether a claim is resolved through litigation or settlement, its taxability is controlled by the nature of the underlying action. Although the settlement agreement specifically settled the Louisiana lawsuit which did not involve Oklahoma properties, it also settled all take-or-pay claims under the other seventeen listed contracts. Thus, in this case, an examination of the nature of the lawsuit referenced in this settlement agreement does not, by itself, necessarily control the taxability of this prepayment because the settlement agreement, according to its language, covered claims in addition to the Louisiana lawsuit. The entirety of the documents which comprise the settlement must be examined.

The fact that the prepayment was recoupable in future production does not negate the fact that the payment was made to settle take-or-pay deficiency claims. Under the gas purchase contracts, payments for take-or-pay deficiencies can be recouped in future gas production in Oklahoma. Arkla's contention the prepayment was simply a payment made to secure future production, unrelated to take-or-pay claims, is without merit.

The fact that Arkla never agreed that any take-or-pay deficiency existed or that no court had determined a take-or-pay deficiency had existed, does not change the nature of the prepayment for tax purposes. If the settlement agreement resolved take-or-pay disputes, a prepayment made under that settlement is taxable to the same extent as if the deficiencies had been paid as required by the gas purchase contract.

Nor has Arkla demonstrated the settlement payment to Marathon falls outside the scope of § 1009(g) because the prepayment, or part of it, might be *refunded* by the producer if the purchaser does not recoup all the payment with gas. The last sentence of § 1009(g) provides: "If said gas, which corresponds to such payments, is not taken but payments therefore are retained by the producer, then said payments are hereby deemed to be a premium on gas which was taken under said contract or agreement".

Thus, under the statute, the payment is not deemed a "premium" on gas taken under the contract unless the producer *retains* the payment. The statute does not exclude potentially-refundable, recoupable take-or-pay settlement payments from the operation of the statute. In *Exxon*, this Court held that if the producer *refunds* to the purchaser the prepayment for gas not taken, the purchaser would be entitled to a refund of the taxes on the refunded amount if a timely claim is filed. *Exxon*, 873 P.2d at 309.[7]

In the instant appeal, Section 1009(g) applies to the prepayment made to Marathon on February 24, 1987 even though the prepayment was refundable and in fact, was refunded in full. Although there is no evidence in the record that Marathon had in fact filed a protective letter for a refund of taxes, Commission takes the position that although Arkla was required by § 1009(g) to pay taxes on the prepayment in 1987, no taxes are now due on the prepayment because Marathon refunded the entire prepayment to Arkla in 1995. Under the facts of this particular case, Commission's conclusion is sound. A refund by Marathon to Arkla of the entire prepayment precludes the conclusion that Marathon "retained" the prepayment which would deem the prepayment a "premium" on gas under the contract under the last sentence of § 1009(g).

■ Arkla maintains that if § 1009(g) does apply to the prepayment, that portion of such payment which pertains to interest should be determined and should be treated as nontaxable. The Commission refused to make an allocation between interest and take-or-pay claims because neither the settlement agreement nor the parties so designated any portion of the prepayment to interest and because the entire amount of the prepayment may be recouped in gas. Arkla has failed to cite to this Court any evidence in the record which supports an allocation of the prepayment between a taxable take-or-pay portion and an non-taxable interest portion. Arkla has also failed to cite any applicable authority.

In the instant appeal, the settlement agreement provides that the entire amount of the prepayment ($12,500,000.00) represented prepayment for certain volumes of natural gas from the contracted wells. There is no allocation of the prepayment in the settlement agreement to anything other than gas. Although an allocation of a prepayment to nontaxable interest may be appropriate in a given case, Commission's determination that an allocation to interest is not required in this action is supported by substantial evidence.[8]

7. An administrator of the Gross Production Tax Section of the Tax Commission testified a purchaser/taxpayer who had paid potentially refundable recoupable take-or-pay monies to a producer could file a "protective letter" requesting a refund with the Commission if the unrecouped take-or-pay monies might be refunded to the purchaser outside the three-year statute of limitations period of 68 O.S.1991, § 227. Commission cites O.T.C. Precedential Order No. 92–11–24–008 (dated 11/24/92) which held the 3–year limitations period applies to refundable/recoupable payments even though a refund might not be made under the agreement until after the 3–year limitations period has expired. In these cases, according to this Order, the taxpayer should file a "protective refund claim" with the taxing authority even though the amount of the refund remains unascertainable until the end of the recoupment period.

8. See O.T.C. Precedential Order 89–09–28–009, O.T.C. Order 89–12–05–25 and O.T.C. Order 93–08–12–011. These orders can be distinguished on their facts from this appeal. All three orders involved *nonrecoupable* payments which were

made to support contract *termination*. In Precedential Order No. 89–09–28–009, which involved a nonrecoupable payment and a recoupable payment, the parties' agreement *specifically provided* that certain parts of the nonrecoupable payment represented interest on the contract price deficiency claim, interest on the amount paid in satisfaction of the take-or-pay deficiency claim, and consideration for the termination of the contracts and the substitution of a new single contract. The Commission determined these amounts were not subject to the gross production tax. In Order No. 89–12–05–25 (dated 12/05/89), a nonrecoupable settlement payment was deemed a nontaxable termination payment because the evidence showed the payment did not bear any relationship to the take-or-pay clause of the gas purchase contract, to past or future production and that there were no accrued deficiencies. In Order No. 93–08–12–011, the settlement agreement contained an allocation statement which specifically identified part of the total settlement was to settle take-or-pay deficiencies and part was for contract termination. The Business Tax Division of Commission assessed taxes on the entire amount. The purchaser protested and

██ Arkla maintains the assessment violates the substantive due process and equal protection guarantees of the 14th Amendment to the United States Constitution.[9] Specifically, it argues Section 1009(g) is arbitrary and unreasonable because it creates a fiction by deeming gas taken under the contract to have an added value (the settlement payment) which is in excess of the true value of the gas. Arkla also maintains the assessment violates the due process clause of the 14th Amendment because the evidence is undisputed that the prepayment related only to gas properties and disputes on contracts outside the State of Oklahoma. It cites *American Oil Company v. Neill,* 380 U.S. 451, 85 S.Ct. 1130, 14 L.Ed.2d 1 (1965) for the rule that the 14th Amendment requires that taxed activities have a sufficient nexus or relation to the taxing state to permit taxation. Arkla also argues the proposed assessment violates the Commerce Clause of the United States Constitution because it constitutes an undue burden on interstate commerce.

██ We have determined that there is substantial evidence to support Commission's finding that the prepayment was made *in part* to settle take-or-pay claims on Oklahoma properties under Oklahoma contracts. The ALJ agreed that the Business Tax Divi-

sion erred by not allocating any portion of the prepayment between the various states and held that an adjustment of the proposed assessment is necessary. The ALJ determined that an allocation of the prepayment is warranted and has requested Arkla to submit a proposed allocation schedule to allocate the prepayment between the various states covered in the gas purchase contracts.[10] This has not been done yet. Nor has Commission issued a revised assessment against Arkla based on an allocation. Accordingly, any discussion of the constitutional validity of an assessment which has not yet been issued, is premature.

██ In *Exxon Corporation v. Oklahoma Tax Commission,* 873 P.2d 306 (Okla. App.1993), this Court determined 68 O.S. 1991, § 1009(g) did not violate the 14th Amendment's due process and equal protection guarantees: "A producer who has received a take-or-pay payment is not so similarly situated to a producer who has received a prepayment under a prepayment provision in a gas purchase contract as to require equal taxation treatment."[11]

The Constitution does not prohibit reasonable classifications for taxation so long as they rest on a difference having a reasonable relation to the subject of legisla-

---

Commission sustained the protest. Commission found the allocation provided for in the settlement was sustained by the evidence and "properly reflected the economic reality of the settlement transaction". Thus, taxes were assessed on the payment related to the take-or-pay claims only.

9. The ALJ refused to address Arkla's constitutional arguments, noting the Commission, as an administrative agency, is not empowered to decide the constitutional validity of a taxing statute. *Dow Jones & Company, Inc. v. Oklahoma Tax Commission,* 787 P.2d 843 (Okla.1990).

10. The ALJ directed Arkla to submit a proposed allocation in this matter based on the ratio of the deliverability of the Oklahoma properties to the deliverability of all of the properties. Raised for the first time in its Reply brief, Arkla maintains this allocation scheme is illogical and inappropriate and that any allocation scheme should consider the gas purchase price differential in each of the gas purchase contracts. Generally, contentions of error cannot be raised for the first time in a reply brief. *R.J.B. Gas Pipeline Company v. Colorado Interstate Gas Company,* 813 P.2d

14, 27 (Okla.App.1990). The ALJ noted neither Section 1009(g) nor Commission regulations address the allocation of a take-or-pay deficiency payment between Oklahoma and non-Oklahoma properties. Although the ALJ directed Arkla to submit a proposed allocation based on deliverability, there is nothing in the order which indicates he precluded consideration of other factors. Because an allocation scheme has not yet been proposed by Arkla and applied to the proposed assessment, this matter is not appropriate for this Court's review in this appeal.

11. In *Exxon,* allocation of the nonrecoupable, nonrefundable prepayment between Oklahoma and other states was not addressed on appeal. The decision provides that the producer had initiated two lawsuits against the purchaser, one in federal court and one in Texas, and that the producer alleged deficiencies under "the contracts". The purchaser paid the producer $42 million dollars, $18 million of which "was attributable to Oklahoma contracts". *Exxon,* at 308. The Oklahoma Tax Commission assessed gross production and petroleum excise taxes on the $18 million dollars only.

tion to the end that all persons similarly situated are treated alike. Classifications not manifestly arbitrary or unreasonable are not constitutionally infirm. An invalid classification is that which discriminates between persons or property in like situations, or which is arbitrary, illusory or one that has no fair or substantial relation to the purpose for which it is made. A tax imposed on the basis of an assumed fact which the taxpayer is not allowed to controvert is, of course, arbitrary and unreasonable.

*Suglove v. Oklahoma Tax Commission,* 605 P.2d 1315, 1320–1321 (Okla.1979).

■■■ The gross production tax is not a property tax. It is a tax "in lieu of" property taxes by the State and its subdivisions and is levied on the occupation or business of producing oil and gas. *Apache Gas Products Corporation v. Oklahoma Tax Commission,* 509 P.2d 109, 114 (Okla.1973). The "standard adopted for the determination of its amount is the value of the gross production of the commodity taxed." *Apache,* at 114. The Legislature has declared, through § 1009(g), that the taxable value of gas includes payments that a producer actually receives for the purchaser's failure to take gas. Thus, the tax is based upon what the producer receives under his contract and applies to all producers similarly situated. Section 1009(g) does not, as Arkla asserts, presume a false fact which the taxpayer is not permitted to controvert. Arkla and other purchasers are provided the opportunity to show a prepayment does not relate to a take-or-pay deficiency claim. If Arkla establishes part of the prepayment does not relate to the settlement of take-or-pay disputes under Oklahoma contracts, then § 1009(g) does not apply to that portion. If Marathon had retained any part of the prepayment, that part of the prepayment so retained and properly allocable to the Oklahoma properties, would be deemed a "premium" under the contract.[12]

**12.** Arkla does not contend Oklahoma gross production and petroleum excise taxes should be assessed on the entire $12.5 million dollar prepayment.

**13.** A state taxing statute violates due process only if it is so arbitrary as to compel the conclusion

Arkla has failed to demonstrate this scheme is an unreasonable, arbitrary classification which requires us to declare it unconstitutional.

■■■ Without § 1009(g), take-or-pay payments which are recoupable from future production would be included in the gross value of gas at the time of production. 68 O.S. 1991, § 1009(b). Under § 1009(g), gross production taxes on a recoupable payment must be paid at the time of the take-or-pay payment. If gas is later recouped, the prior payment corresponds to such recouped gas and the purchaser shall report this gas to the Tax Commission as gas on which said tax has been paid. § 1009(g). Thus, the subsection simply changes the time when gross production taxes are paid for recouped payments. By requiring the tax to be paid at the time the recoupable payment is made, the Legislature insures that the State obtains the tax on the gross value of the gas, which includes the time use value of the payment. If the payment is not recouped in gas and the producer retains any part of the payment, then that part of the retained payment is deemed part of the "gross value" (a "premium") of gas taken under the contract or agreement and is taxable under § 1009(g). The tax (7%) is based on what the producer receives under his contract, i.e. the "gross value". 68 O.S. 1991, § 1001(b). This includes monies paid in settlement of take-or-pay deficiencies which correspond to gas which was required to be taken and paid for or paid for whether or not taken. The tax never exceeds 7% of the gross proceeds realized by the producer under the gas purchase contract. Accordingly, the taxing scheme is not unconstitutional because it is "confiscatory".[13]

■■■ Arkla next maintains § 1009(g) violates the "uniformity requirement" of Art. 10, § 5 of the Oklahoma Constitution. This constitutional section provides:

that the act does not involve exertion of the taxing power, but is in substance and effect, a direct exertion of a different and forbidden power, such as confiscation of property. *A. Magnano Co. v. Hamilton,* 292 U.S. 40, 42–45, 54 S.Ct. 599, 601, 78 L.Ed. 1109 (1934).

The power of taxation shall never be surrendered, suspended, or contracted away. Taxes shall be uniform upon the same class of subjects.

Arkla argues Section 1009(g) violates this provision because it deems gas from a well on which a settlement payment has been made to have a higher value than gas from a well where no settlement payment is made.

The uniformity provision of Article 10, Section 5 relates to the *rate* of taxation. *Continental Oil Company v. Oklahoma State Board of Equalization*, 570 P.2d 315 (Okla.1976). Further, it applies to *property* taxes only. *In the Matter of Income Tax Protest of Flint Resources*, 780 P.2d 665 (Okla.1989). As noted above, the Oklahoma Supreme Court in *Apache*, supra, determined the gross production tax is not a property tax, but a tax levied on the occupation or business of gas production and is based on the value of the gross production. Section 1009(g) is not a property tax and does not provide for different rates of taxation. The fact that § 1009(g) provides that take-or-pay payments shall be included in and deemed a part of the value of all gas taken under the contract, does not render it unconstitutional as violative of Art. 10, § 5. In Article 10, § 22 of the Oklahoma Constitution, "Nothing in this Constitution shall be held, or construed, to prevent the classification of property for purposes of taxation; and the valuation of different classes by different means or methods." This assignment of error is overruled.

Arkla argues § 1009(g) is a "special law" in violation of Article V, sec. 59 of the Oklahoma Constitution.[14] Arkla cites no authority, other than this provision of the Oklahoma Constitution, to support its argument that the entire Gross Production Tax Code, 68 O.S.1991, §§ 1001–1024, is a general law and that § 1009(g) thereof, is an impermissible special law. We refuse to consider assignments of error, unsupported by convincing argument or authority, unless it is apparent, without further research, that they are well taken. *James v. State Farm Mutu-*

*al Automobile Insurance Company,* 810 P.2d 365, 371 (Okla.1991). Legislative acts are presumed constitutional and will be upheld unless clearly, palpably and plainly inconsistent with the Constitution. *Kimery v. Public Service Company of Oklahoma,* 622 P.2d 1066 (Okla.1980). Arkla has failed to preserve this issue for our review.

Gross production taxes on the settlement payment to Marathon were required to be paid at the time of the settlement. Because Marathon has refunded the prepayment, no taxes on this settlement are now required. Penalty and interest on the gross production taxes which should have been paid at the time of settlement may be assessed. So may penalties and interest on petroleum excise taxes which should have been paid on the prepayment under 68 O.S.1991, § 1102. As the ALJ noted, petroleum excise tax is levied in addition to gross production tax on all gas which is subject to the gross production tax.

Finally, Arkla contends that even if the assessment of taxes under § 1009(g) is not erroneous and that the prepayment must be allocated between states, Commission should waive the penalty and interest under 68 O.S.1991, § 220(a). That subsection provides:

(A) The interest or penalty or any portion thereof ordinarily accruing by reason of a taxpayer's failure to file a report or return or failure to file a report or return in the correct form as required by any state tax law or by this Code or to pay a state tax within the statutory period allowed for its payment may be waived or remitted by the Tax Commission provided the taxpayer's failure to file a report or return or to pay the tax is satisfactorily explained to the Tax Commission, or provided such failure has resulted from a mistake by the taxpayer of either the law or the facts subjecting him to such tax, or inability to pay such interest or penalty resulting from insolvency. * * * *

Arkla wants the interest and penalties waived because its failure to pay the taxes

---

14. Article 5, Sec. 59 of the Oklahoma Constitution provides: "Laws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted."

was based on a genuine and good faith belief that the prepayment was not subject to taxes. It argues Commission had not issued any rules or pronouncements regarding 68 O.S.1991, § 1009(g) until the December, 1994, and January and February, 1995, orders in this and Arkla's other assessments. The ALJ recommended, in its Order Denying Motion for Reconsideration and Rehearing, that Arkla's request for waiver of penalty and interest be denied. This recommendation of denial was adopted by Commission in the appealed-from Order.

■ As stated in *Exxon Corporation v. Oklahoma Tax Commission,* 873 P.2d 306, 310 (Okla.App.1994), the mere fact a statute exists allowing remittitur of penalty and interest does not require Commission to waive it. *Wal–Mart Stores, Inc. v. Oklahoma Tax Commission,* 817 P.2d 1281 (Okla.App.1991). Under 68 O.S.1991, § 220, waiver of interest and penalty is discretionary with the Commission. *Exxon,* supra. We will not order a remittitur of the interest and penalty unless an abuse of discretion is shown. *Id.*

In its hearing brief, Arkla argued waiver is appropriate because Commission did not provide purchasers with guidance regarding the applicability of § 1009(g) to settlement payments. There is no evidence in the record that Arkla sought any guidance from Commission or received any incorrect advice from Commission. Although there do not appear to be any Rules promulgated by Commission regarding § 1009(g) to settlement payments, in two 1989 orders of the Commission, Order No. 89–12–05–25 and Precedential Order No. 89–09–28–009 which was the subject of a 1990 law review article, the applicability of § 1009(g) to settlement payments was directly addressed. Still, Arkla did not tender any

gross production or excise taxes under protest on the prepayments. In both of the 1989 orders, the taxpayers paid the taxes first and requested a refund. Arkla could have done the same.

Taxes on the prepayment amount allocable to Oklahoma were due when the prepayment was made (1987). The assessment was issued in February, 1989, after an audit of Arkla's records. In June, 1989, Arkla protested the assessment. The Commission's Order which adopted the ALJ's findings was issued in February, 1995. Although six years passed from the time of the assessment to the date of the Order, part of this was due to Commission's disposition of Arkla's motions for reconsideration and for en banc hearings in the thirty-six related cases. Under the facts of this appeal and the record before us, we cannot say Commission abused its discretion in denying Arkla's request to waive the penalties and interest assessed.

Accordingly, the order of the Oklahoma Tax Commission is AFFIRMED. This cause is REMANDED to the Oklahoma Tax Commission for a determination of the amount of interest and penalties due on any gross production and petroleum excise taxes which Arkla should have paid on that part of the prepayment which is allocable to the Oklahoma contracts.

ADAMS, V.C.J., and JONES, J., concur.